878 A.2d 772

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
EDWIN KEYES, DEFENDANT–RESPONDENT.

Argued March 14, 2005—Decided August 3, 2005.

544

---

*Steven J. Zweig,* Deputy Attorney General, argued the cause for appellant (*Peter C. Harvey,* Attorney General of New Jersey, attorney).

*Diane Toscano,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

Justice ZAZZALI delivered the opinion of the Court.

After the police received a tip from a confidential informant that a man was selling cocaine from an apartment in Atlantic City, they attempted to confirm the tip by conducting a controlled drug buy with the informant's help. However, the police were only able to observe the informant enter the area surrounding the target residence, not the dwelling itself. The informant nonetheless returned from the controlled buy with a white powdery substance that field-tested positive for cocaine. After a subsequent investigation revealed that the suspected seller had prior drug-related convictions, the police obtained a search warrant for the residence. When the police entered the apartment, they found defendant, who was the suspect's brother, in possession of narcotics.

Defendant was indicted on drug possession and distribution charges. Following the trial court's denial of his motion to suppress the drug evidence found during the search, defendant pled guilty and was sentenced to an eight-year prison term. The Appellate Division reversed the order denying defendant's motion to suppress, reasoning that the search warrant was not based on probable cause. Because we conclude that, under the totality of the circumstances, probable cause existed, we reverse.

I.

In March 2000, a confidential informant gave the Atlantic City Police a tip that a man named "Bilal" was selling cocaine at 236 Rosemont Place in Atlantic City. That address is the ground floor apartment of a two-story row home that is located within the Stanley Holmes Village Housing Project. The informant described the man as black, about twenty-five years old, five feet, nine inches tall, and 235 pounds. After the police showed the informant a picture of William Keyes, the brother of defendant Edwin Keyes, the informant identified him as Bilal. A criminal background check revealed that William Keyes had previous convictions for various drug offenses. The informant then agreed to help the police perform a controlled buy at 236 Rosemont Place.

Officers searched the informant to ensure that he did not possess any contraband, provided him with money, and arranged to meet with him upon his return.

The layout of the buildings within the housing project obstructed the officer's surveillance efforts during the controlled buy. Because it was not possible to gain a direct view of 236 Rosemont Place from where the officers were positioned, the police could observe only the general area of the apartment. As a result, the police did not see the informant physically enter the residence. However, the informant met the police at the predetermined location where he told the officers that while inside 236 Rosemont Place, he handed money to Bilal in exchange for what he believed was cocaine. A field test confirmed that the substance the police received from the informant was indeed cocaine.

The police applied for a warrant to search 236 Rosemont Place. Detective Robert DeGaetano of the Atlantic City Police Department's Narcotics Unit submitted a sworn affidavit in support of the warrant. The relevant provisions are as follows:

> This application is submitted in support of my request for the issuance of a search warrant for the address of 236 Rosemont Place in Atlantic City, New Jersey. This location is more particularly described as: a two (2) story red brick apartment row home, located within Stanley Holmes Village. 236 Rosemont Place is a one story apartment and is on the ground floor. The target door is blue, faces east and has the numbers "236" on top of the door. A black male identified as William Keyes AKA "Bilal", described as 25 years of age, 5'9", 235 lbs is selling cocaine from 236 Rosemont Place in Atlantic City, New Jersey. . . .
>
> . . . .
>
> During the week of March 26th, 2000 through April 2nd, 2000, Detective DeGaetano of the Atlantic City Police Department Narcotics Unit was contacted by a reliable confidential informant ([RCI]). *This [RCI] has been proven reliable and has provided information in the past that has resulted in the arrest of numerous suspects and the recovery of proceeds from drug sales.*
>
> . . . RCI stated a black male who goes by the name of Bilal, described as approximately 25 years of age, 5'9", 235 lbs is selling cocaine from 236 Rosemont Place in Atlantic City, New Jersey. This affiant obtained a picture of William Keyes AKA "Bilal" from ACPD files and showed it to the RCI. The RCI positively identified William Keyes as being the male selling cocaine from 236 Rosemont Place.
>
> . . . RCI again contacted the affiant and . . . agreed to make a controlled purchase from 236 Rosemont Place in Atlantic City, New Jersey. RCI was searched for

personal funds and/or contraband and this search was negative. RCI was then supplied with ACPD Vice funds to purchase CDS from this target location. RCI was observed going into the area of the 200 block of Rosemont Place and entered an apartment on the west-side of the projects, which is the side apartment 236 is located. After a short time, RCI was observed leaving this area and returned to a predetermined location. RCI then turned over to the affiant one blue tinted ziploc bag that contained *a white rocky substance and field-tested positive for cocaine* by Detective DeGaetano. The RCI stated that he/she handled U.S. currency to "Bilal" in exchange for the CDS (cocaine) while inside 236 Rosemont Place. *Due to the configuration of Stanley Holmes Village and the layout of the area, surveillance was not established on the target door. Surveillance could only be established looking into the projects and not at a direct angle to the target door.*

*A New Jersey Criminal history check of William Keyes shows that he has four felony convictions. The first conviction is in 1992 for dangerous drugs.* The second and third convictions are in 1994 for manufacture/distribute CDS and hindering apprehension. And the last conviction is in 1998 for forged writing.

According to the Atlantic City Housing Authority list for Stanley Holmes Village, 236 Rosemont Place is occupied by Emma Nellom, DOB 8/20/50. A New Jersey criminal history check of Nellom shows that she was charged with Homicide in 1974.

*The Narcotics Office routinely receives complaints from residents in the area, about the constant activity in the 200 block of Rosemont Place.* During periodic surveillance in the area of the 200 block of Rosemont Place, *there have been known drug users observed entering an apartment* on the west-side and exiting shortly after, which is consistent with narcotic activity. According to the RCI, *there are lookouts that stand outside 236 Rosemont Place and alert drug dealers when Police come into the area.* It is also common Police knowledge that it is difficult to gain entry into Stanley Holmes Village without being noticed by people hanging in the projects, who frequently alert others of Police presence.

[ (Emphasis added.) ]

The municipal court granted the search warrant for 236 Rosemont Place and, two days later, the police executed the warrant. Upon entering the premises, the police discovered four people, including defendant, in the residence. Within close proximity to defendant, the police found various narcotics paraphernalia and seven plastic bags containing a white rocky substance that field-tested positive for cocaine. When the police arrested defendant, they also discovered $140 in his possession. The State alleges that defendant admitted to ownership of the drugs at the scene.

A grand jury indicted defendant, and the three other individuals found in the apartment, on five counts of drug possession and distribution. Arguing that the police did not have probable cause

to search 236 Rosemont Place, defendant moved to suppress the drugs seized pursuant to the warrant. Following denial of that motion, defendant pled guilty to two counts, second-degree possession of cocaine with the intent to distribute, *N.J.S.A.* 2C:35–5a(1) and –5b(2), and third-degree distribution of cocaine within a school zone, *N.J.S.A.* 2C:35–7. In accordance with the plea agreement, defendant was sentenced to concurrent eight-year terms, with thirty-nine months parole ineligibility on the possession count and forty-five months parole ineligibility on the distribution count.

After concluding that the police lacked probable cause, the Appellate Division, in an unpublished per curiam opinion, reversed the trial court's order denying suppression of the drugs discovered during the search. The panel stated that although Detective DeGaetano's affidavit asserted that the informant was reliable, the statement lacked "any detail whatsoever" as to the informant's history of truthfulness. The court also found that the affidavit failed to sufficiently set forth the basis of the informant's knowledge because the document did not detail how the informant learned of William Keyes's alleged cocaine dealing.

The panel further concluded that the officers' independent corroboration of the informant's tip was insufficient. Specifically, the court found that the controlled buy was deficient because the police did not actually observe the informant enter 236 Rosemont Place. Nor did the police take any other steps to determine whether the apartment, registered under the name of Emma Nellom, was being used by William Keyes to sell drugs. According to the panel, this lapse rendered the police unable to verify "the informant's bald assertion that the drug activity emanated from 236 Rosemont Place and was being conducted by a non-resident, William Keyes." The court did find, however, that the officers' field-test of the drugs in question was adequate.

We initially granted the State's petition for certification, 180 *N.J.* 149, 849 *A.*2d 182 (2004), and summarily ordered the Appellate Division to reconsider its decision in light of our holding in *State v. Jones*, 179 *N.J.* 377, 846 *A.*2d 569 (2004). Upon reconsid-

eration, the same panel concluded that there was "no basis in law or fact to alter [its] initial view of the matter." We again granted the State's petition for certification. 182 *N.J.* 208, 863 *A.*2d 365 (2004).

## II.

The State argues that the Appellate Division's opinion essentially establishes a per se rule that requires police conducting a controlled drug buy to observe the informant actually enter the residence where the drugs are allegedly being sold. The State believes that the panel's decision undermines covert narcotics operations in two ways. First, the safety of both the informant and the investigating officers is compromised if the officers are forced to risk exposure of their surveillance by positioning themselves near the target residence. The State notes that "drug activity often occurs inside apartment buildings or in apartment complexes with semi-enclosed courtyards, for the very reason that drug traffickers know that police cannot closely approach without revealing their presence or the identity of their informants." Second, the panel's decision eliminates the utility of reliable informants by setting "the mark for probable cause at a level approaching virtual certainty rather than well-founded suspicion." To avert these problems, the State asks this Court to find that there was a sufficient basis for the court's finding of probable cause based on the information the officers received from their confidential informant and the officers' corroborative efforts, which included the controlled buy.

In contrast, defendant argues that the affidavit supporting the warrant was inadequate to sustain a finding of probable cause, and, therefore, the appellate court properly reversed the trial court's denial of his motion to suppress. Defendant contends that the affidavit failed to establish the informant's reliability because it stated that the informant merely provided tips leading to arrests, not convictions. Defendant also asserts that the affidavit failed to provide any "indication of how the informant learned the

information" he conveyed to the police. Further, defendant maintains that the unobserved controlled buy did not provide enough corroboration of the informant's tip to satisfy either the veracity or knowledge requirements. Finally, according to defendant, the officers' other attempts at corroboration were deficient because they did not establish a link between William Keyes and 236 Rosemont Place.

## III.

Under both the federal and State Constitutions, "police officers must obtain a warrant from a neutral judicial officer prior to searching a person's home, unless the search falls within one of the recognized exceptions to the warrant requirement." *State v. Sullivan*, 169 *N.J.* 204, 210, 777 *A.*2d 60 (2001) (internal quotation marks omitted). Before a warrant is issued, however, "the judge must be satisfied that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched." *Ibid.* Stated differently, search warrants must be based on sufficient specific information to enable a prudent, neutral judicial officer to make an independent determination that there is probable cause to believe that a search would yield evidence of past or present criminal activity. *State v. Novembrino*, 105 *N.J.* 95, 120, 124, 519 *A.*2d 820 (1987).

Although probable cause "eludes precise definition," *Wildoner v. Borough of Ramsey*, 162 *N.J.* 375, 389, 744 *A.*2d 1146 (2000), it is generally understood to mean "less than legal evidence necessary to convict though more than mere naked suspicion," *Sullivan*, *supra*, 169 *N.J.* at 210–11, 777 *A.*2d 60 (internal quotation marks omitted). This Court has characterized probable cause "as a common-sense, practical standard for determining the validity of a search warrant." *Novembrino*, *supra*, 105 *N.J.* at 120, 519 *A.*2d 820. Therefore, reviewing courts must bear in mind that "[p]robable cause is a flexible, nontechnical concept" that requires balancing "the governmental need for enforcement of the criminal

law against the citizens' constitutionally protected right of privacy." *State v. Kasabucki,* 52 *N.J.* 110, 116, 244 *A.*2d 101 (1968). Reviewing courts must "accommodate those often competing interests so as to serve them both in a practical fashion without unduly hampering the one or unreasonably impairing the significant content of the other." *Ibid.*

■ The United State Supreme Court has established a totality of the circumstances test for determining whether warrants are based on probable cause, *Illinois v. Gates,* 462 *U.S.* 213, 230–32, 103 *S.Ct.* 2317, 2328–29, 76 *L.Ed.*2d 527, 543–44 (1983), and we have adopted that approach, *Novembrino, supra,* 105 *N.J.* at 122, 519 *A.*2d 820. Under the totality of the circumstances test, courts must consider all relevant circumstances to determine the validity of a warrant. *State v. Smith,* 155 *N.J.* 83, 92, 713 *A.*2d 1033, *cert. denied,* 525 *U.S.* 1033, 119 *S.Ct.* 576, 142 *L.Ed.*2d 480 (1998); *see also Schneider v. Simonini,* 163 *N.J.* 336, 361, 749 *A.*2d 336 (2000) ("When determining whether probable cause exists, courts must consider the totality of the circumstances, and they must deal with probabilities."), *cert. denied,* 531 *U.S.* 1146, 121 *S.Ct.* 1083, 148 *L.Ed.*2d 959 (2001).

■ We have consistently held that "a search executed pursuant to a warrant is presumed to be valid and that a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.' " *Jones, supra,* 179 *N.J.* at 388, 846 *A.*2d 569 (quoting *State v. Valencia,* 93 *N.J.* 126, 133, 459 *A.*2d 1149 (1983)). Accordingly, courts "accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant." *Ibid.* (internal quotation marks omitted) (alteration in original). Doubt as to the validity of the warrant " 'should ordinarily be resolved by sustaining the search.' " *Id.* at 389, 846 *A.*2d 569 (quoting *Kasabucki, supra,* 52 *N.J.* at 116, 244 *A.*2d 101).

Information that police receive from confidential informants may serve as a valid basis for a court to find probable cause and issue a search warrant. *Ibid.* However, there must be substantial evidence in the record to support the informant's statements. *Ibid.* Specifically, "[w]hen examining an informant's tip . . ., the issuing court must consider the 'veracity and basis of knowledge' of the informant as part of its 'totality' analysis." *Ibid.* (quoting *Novembrino, supra,* 105 *N.J.* at 123, 519 *A.2d* 820). Importantly, "[a] deficiency in one of those factors may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *State v. Zutic,* 155 *N.J.* 103, 110–11, 713 *A.2d* 1043 (1998) (internal quotation marks omitted).

The veracity factor may be satisfied by demonstrating that the informant has proven reliable in the past, such as providing dependable information in previous police investigations. *Sullivan, supra,* 169 *N.J.* at 213, 777 *A.2d* 60. However, "past instances of reliability do not conclusively establish an informant's reliability." *Smith, supra,* 155 *N.J.* at 94, 713 *A.2d* 1033. The current evidence must give the court an opportunity to make an independent evaluation of the informant's present veracity. In addition, a conclusory statement that the affidavit is "based on information [the police] received from a confidential reliable informer" is not sufficient to establish the informant's veracity. *Zutic, supra,* 155 *N.J.* at 111, 713 *A.2d* 1043 (internal quotation marks omitted). Similarly, a statement that the police believe the informant is reliable because he "did a job for [an officer] in the past," without additional information, will not firmly establish veracity. *Smith, supra,* 155 *N.J.* at 96–97, 713 *A.2d* 1033 (internal quotation marks omitted).

The second factor, basis of knowledge, analyzes whether the informant obtained his information in a reliable manner. *Id.* at 94, 713 *A.2d* 1033. To determine an informant's basis of knowledge, the court must decide whether the tip reveals "expressly or clearly" how the informant became aware of the alleged

criminal activity. *Ibid.* Even without an explicit disclosure, the police can still adequately demonstrate the informant's basis of knowledge if "the nature and details revealed in the tip ... imply that the informant's knowledge of the alleged criminal activity is derived from a trustworthy source." *Ibid.* For instance, the information will be deemed to have come from a trustworthy source if the informant provides "sufficient detail in the tip or recount[s] information that could not otherwise be attributed to circulating rumors or easily gleaned by a casual observer." *Id.* at 95, 713 *A.*2d 1033.

 Because statements made by informants are considered to be hearsay, *Sullivan, supra,* 169 *N.J.* at 213, 777 *A.*2d 60, independent police " 'corroboration is necessary to ratify the informant's veracity and validate the truthfulness of the tip' and is considered 'an essential part of the determination of probable cause,' " *Jones, supra,* 179 *N.J.* at 390, 846 *A.*2d 569 (quoting *Smith, supra,* 155 *N.J.* at 95, 713 *A.*2d 1033). And even "if the informant's tip fails to demonstrate sufficient veracity or basis of knowledge, a search warrant issued on the basis of the tip may still pass muster if other facts included in a supporting [police] affidavit justify a finding of probable cause." *Ibid.* The degree of corroboration that the police must present to the issuing court depends on a qualitative analysis of "the unique facts and circumstances presented in each case." *Ibid.* Nonetheless, relevant corroborating facts may include a controlled drug buy performed on the basis of the tip, positive test results of the drugs obtained, records confirming the informant's description of the target location, the suspect's criminal history, and the experience of the officer who submitted the supporting affidavit. *Id.* at 390–91, 846 *A.*2d 569. Although no corroborating fact, by itself, conclusively establishes probable cause, a successful "controlled buy 'typically will be persuasive evidence in establishing probable cause.' " *Id.* at 392, 846 *A.*2d 569 (quoting *Sullivan, supra,* 169 *N.J.* at 217, 777 *A.*2d 60). Indeed, when the police have performed a successful controlled drug buy we have found that "even one additional

circumstance might suffice, in the totality of the circumstances, to demonstrate probable cause." *Ibid.*

## IV.

█ With those principles in mind, we turn to the case at hand. We now examine the totality of the circumstances, including the confidential informant's veracity, his basis of knowledge, and all relevant police corroboration of those two factors, to determine whether the issuing court had a substantial basis to conclude that probable cause existed to search 236 Rosemont Place. We emphasize that the presence or absence of either the veracity or basis of knowledge factors is not determinative and that the analysis must examine all relevant circumstances.

█ Unlike the police affidavits we found deficient in *Zutic* and *Smith*, the affidavit here does more than merely state that the tip came from a reliable confidential informant. Specifically, the affidavit states that the informant has proven himself to be reliable by providing "information in the past that has resulted in the arrest of numerous suspects and the recovery of proceeds from drug sales." And, contrary to defendant's argument, an informant's reliability can be based on arrests. *See, e.g., United States v. Cochrane*, 896 *F.*2d 635, 641 (1st Cir.), *cert. denied*, 496 *U.S.* 929, 110 *S.Ct.* 2627, 110 *L.Ed.*2d 647 (1990).

To be sure, a more detailed explanation of the informant's reliability would have strengthened the motion court's veracity finding. For example, the affidavit could have stated whether the informant's prior information led to convictions in addition to arrests. The State contends that further details in the affidavit would have jeopardized the informant's anonymity. Perhaps that is true, but the affidavit should have made that representation. Nonetheless, under the totality of the circumstances presented in this case, we conclude that this affidavit satisfies the veracity factor. The corroborating evidence described below reinforces that conclusion.

We add only that defense counsel stated during oral argument that the police, in order to satisfy the veracity prong, should have used another informant who had a greater history of reliability or used an undercover officer to make the controlled buy. Although both suggestions were good faith efforts to explain alternative police action, the first alternative is unrealistic because police must take their informants as they find them. The second suggestion compromises the integrity of future investigations and may, under the circumstances, be too dangerous.

We next consider the informant's basis of knowledge. Here, the informant stated that a "black male who goes by the name of Bilal, described as approximately 25 years of age, 5'9", 235 lbs. is selling cocaine from 236 Rosemont Place in Atlantic City, New Jersey." The informant also identified William Keyes from a police file photograph as the suspect. Furthermore, the informant stated that there were lookouts standing outside the apartment that alerted drug dealers when police entered the housing project.

Although the tip recounts some "information that could not otherwise be attributed to circulating rumors or easily gleaned by a casual observer," *Smith, supra,* 155 *N.J.* at 95, 713 *A.*2d 1033, the relative lack of detail weakens the basis of the knowledge prong. Nevertheless, when "the tip lacks sufficient detail to establish a basis of knowledge, independent police investigation and corroboration of the detail in the tip must be considered because it may in some circumstances add to the evidentiary weight of factors as well as the overall circumstances." *Id.* at 98, 713 *A.*2d 1033. Moreover, "if police corroborate 'information from which it can be inferred that the informant's tip was grounded on inside information, this corroboration is sufficient to satisfy the basis of knowledge prong' as well as the veracity prong." *Id.* at 95–96, 713 *A.*2d 1033 (quoting *Gates, supra,* 462 *U.S.* at 270 n. 22, 103 *S.Ct.* at 2349–50 n. 22, 76 *L.Ed.*2d at 569 n. 22). Additionally, "[a] deficiency in one ... factor[ ] may be compensated for ... by some other indicia of reliability." *Zutic, supra,* 155 *N.J.* at 110–11, 713 *A.*2d 1043 (internal quotation marks omitted).

 The controlled buy is thus central to our analysis whether the corroborating facts presented in the police affidavit adequately support the confidential informant's veracity and basis of knowledge. As Justice Verniero stated in *Sullivan, supra,* although no one corroborating fact is outcome determinative, a successful controlled drug buy is generally very persuasive evidence. 169 *N.J.* at 217, 777 *A.*2d 60. When coupled with at least one additional corroborating circumstance, a controlled buy typically suffices to demonstrate that the police, under the totality of the circumstances, had probable cause. *Jones, supra,* 179 *N.J.* at 392, 846 *A.*2d 569. Here, the other police corroboration of the informant's tip substantially supports the motion court's finding of probable cause to search 236 Rosemont Place.

That additional corroboration included the following. The substance obtained during the controlled buy field-tested positive for cocaine. A criminal history check of William Keyes revealed that he had four felony convictions, including convictions for manufacturing and distributing drugs. The police routinely received complaints from area residents about the constant drug activity in the 200 block of Rosemont Place. Moreover, the police observed known drug users entering an apartment on the west side of the 200 block of Rosemont Place and exiting shortly after. The police have detected lookouts in the housing project that alert drug dealers when police approach the area. In addition, the affiant has extensive experience and education in drug-related activities. Beyond peradventure, the facts in this appeal, considered collectively, constitute more corroboration than is present in the typical search and seizure case. That finding reinforces both the informant's veracity and his basis of knowledge and leads us to the conclusion that probable cause existed in the totality of these circumstances.

 We reject the panel's conclusion, and defendant's argument, that the controlled buy in this case does not corroborate the informant's veracity and basis of knowledge because the police could not directly observe the informant enter the target residence

during the controlled buy. As we stated, the layout of the buildings in the housing project made it impossible for the investigating officers to gain a direct view of 236 Rosemont Place, leaving them only able to observe defendant approach the general area of the apartment. Although "[t]he facts surrounding the controlled buy[ ] are relevant in analyzing the police corroboration of the informant's tip," *Sullivan, supra,* 169 *N.J.* at 214, 777 *A.*2d 60, "[t]he fact that the police were unable to observe the informant enter [the apartment] itself does not prevent a finding of probable cause," *id.* at 216, 777 *A.*2d 60. Instead, the officer's inability to observe the informant enter the target residence is just another factor that the court should consider under the totality of the circumstances analysis. *Id.* at 216, 777 *A.*2d 60. Here, given all of the police corroboration described above, the officers' inability to witness the informant enter the apartment does not alter our conclusion that the police had probable cause to obtain a search warrant. We note that, as the State argues, had the police attempted to approach 236 Rosemont Place they would have risked exposing their surveillance to lookouts, endangering the safety of the informant and the officers. Although we prefer that the police observe the entry, if it is not reasonably possible to do so, we will not micromanage police work by imposing such an impracticable duty.

Finally, we address the panel's conclusion that the police did not have probable cause to search 236 Rosemont Place because, other than the informant's tip, they did not uncover a direct connection between William Keyes and the apartment. As the State argues, "drug dealers frequently use aliases and ply their illegal trade from quarters lacking any easily discernable connection with their real identities." The State further argues that "[p]olice should not be hamstrung ... because drug dealers refuse to provide their given names on a utility bill or lease or give out the phone number of their current drug den." Although not essential to our holding, we note that the informant's tip and the corroborating evidence justify the police inference that 236 Rosemont Place was of some importance as a point of drug distribution for William Keyes.

## V.

For the benefit of the law enforcement community, future defendants, and our courts, we encourage the drafting of affidavits that contain as much detail as is reasonably possible. If there are specific reasons why disclosure should be limited, the affiant should provide the motions court with that information.

Because the totality of the circumstances in this matter reveals that the police had probable cause to obtain a search warrant, we reverse the Appellate Division and reinstate the trial court's denial of defendant's motion to suppress the drugs seized pursuant to the warrant.

*For reversal and reinstatement*—Chief Justice PORITZ, Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None