**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5187-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DEE THOMAS,

    Defendant-Appellant.

_____

Submitted March 9, 2017 — Decided  May 10, 2017

Before Judges Hoffman and Whipple.

On appeal from Superior Court of New Jersey,
Law Division, Mercer County, Indictment No.
13-10-1272.

Joseph E. Krakora, Public Defender, attorney
for appellant (Al Glimis, Assistant Deputy
Public Defender, on the brief).

Angelo J. Onofri, Mercer County Prosecutor,
attorney for respondent (Alycia I. Pollice-
Beyrouty, Assistant Prosecutor, of counsel and
on the brief).

PER CURIAM

    Defendant Dee Thomas appeals from a May 27, 2015 judgment of

conviction after the entry of a guilty plea.  We affirm defendant's

conviction but remand for a statement of reasons as to why the court imposed a four-year period of parole ineligibility.

Mercer County Prosecutor's Office (MCPO), Special Investigations Unit, conducted a six-month narcotics investigation surrounding cocaine distribution by defendant from two separate addresses in Trenton. In April 2013, Detective Kevin Searing received information from a confidential informant (CI) who had personal knowledge an individual by the name of "Cork" was selling large quantities of cocaine throughout Trenton. Because of previous investigations, Searing knew "Cork" was defendant.

The CI had purchased cocaine from defendant on prior occasions, and routinely called defendant each time requesting a specific amount. Defendant would pick a time and location to meet and complete the transaction. The CI provided defendant's residential address and stated defendant drove a gray GMC Yukon (Yukon) and a black BMW (BMW).[1] The CI reported defendant possessed a firearm at another address in Trenton (second address). The CI described defendant as a black male, between thirty to thirty-five years old, approximately 6'5" and 220 pounds. Searing obtained a photograph of defendant from the New Jersey Department

---

[1] Hereinafter, we refer to defendant's residential address as "residential address." We note this is defendant's girlfriend's residence where defendant spends his time.

of Motor Vehicle Services (Motor Vehicle), and the CI identified the person in the photo as "Cork."

A controlled buy was arranged between the CI and defendant. Searing met with the CI, searched the CI and his vehicle for drugs and money, and provided the CI with the funds necessary to complete the transaction. The CI then called defendant and held the phone so Searing could hear the conversation. The CI asked to purchase cocaine and defendant said to meet him at the second address in twenty minutes. Searing's colleague, Detective Jesus Perea, was surveilling the residential address and reported defendant's Yukon was in front of the home.

The CI drove to the second address. Searing followed, while surveillance units followed defendant as he left the residential address in the Yukon. Searing observed defendant arrive and enter the second address. The CI walked to the front door, knocked, and entered. A few minutes later, the CI exited the residence and left the area in his vehicle.

Several members of the surveillance unit followed defendant back to the residential address while Searing met with the CI at another location. The CI informed Searing that once he was inside the residence, defendant gave him cocaine in exchange for money. The CI gave Searing the cocaine, which tested positive. Two more

controlled buys were arranged between defendant and the CI. All buys produced positive results for cocaine.

After the third controlled buy, on May 23, 2013, Searing obtained five search warrants: one for defendant, one for the residential address, one for the second address, one for defendant's Yukon, and one for defendant's BMW.

On May 29, 2013, at approximately 5:14 p.m., police executed the search warrant at the second address. As officers approached the residence, defendant was walking from his BMW parked across the street. Officers approached and secured defendant, as other officers entered the residence and observed two boxes of baking soda, one box of plastic bags, one plastic zip lock bag containing numerous smaller zip lock bags, and two fully operable digital scales. After a search of defendant's person, officers found $1,853 in cash and a set of car keys for the BMW. The search of the BMW uncovered two plastic bags with what appeared to be crack cocaine, a credit transfer paperwork in defendant's name, and a New Jersey vehicle registration and insurance card for the BMW, both in defendant's name.

Around the same time, officers executed a search of the residential address. Police found plastic bags with what appeared to be crack cocaine, $620 in cash, a box of .44 caliber ammunition, a bill of sale for the BMW, pieces of mail in defendant's name,

baking soda, plastic bags, an operable digital scale, as well as some loose rocks, suspected to be crack cocaine.

Defendant was arrested and advised of his constitutional rights; he agreed to speak with the police. Defendant admitted the drugs recovered by the officers were his and that he had the intent to distribute.

On October 4, 2013, a Mercer County grand jury indicted defendant on two counts of third-degree possession of a controlled dangerous substance (CDS), contrary to N.J.S.A. 2C:35-10(a)(1) (counts one and two); first-degree possession of CDS with the intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1) (count three); second-degree possession with intent to distribute CDS, contrary to N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2) (count four); two counts of third-degree possession of CDS with the intent to distribute on or near school property, contrary to N.J.S.A. 2C:35-7, N.J.S.A. 2C:35-5(a)(1), and N.J.S.A. 2C:35-5(b)(1) (counts five and six); and second-degree possession of CDS with intent to distribute near a public facility, contrary to N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1) (count seven).

On August 14, 2014, defendant moved to suppress evidence seized pursuant to the search warrants. The judge denied the motion.

On April 27, 2015, defendant pled guilty to first-degree possession of CDS with intent to distribute. On May 22, 2015, defendant was sentenced to a ten-year prison term with four years of parole ineligibility, in accordance with the recommended sentence in the plea agreement. In imposing the sentence, the court found aggravating factors three, risk defendant will commit another offense, and nine, the need for deterrence. The court found no mitigating factors.

Defendant filed a notice of appeal on July 21, 2015. Defendant raises the following points on appeal:

> POINT I
>
> THE TRIAL COURT ERRED BY DENYING DEFENDANT'S REQUEST FOR A HEARING ON THE VERACITY OF THE ALLEGATIONS IN THE SEARCH WARRANT AFFIDAVIT. IN ANY EVENT, THE AFFIDAVIT FAILED TO PROVIDE PROBABLE CAUSE TO SEARCH DEFENDANT'S HOME, AUTOMOBILE, AND PERSON. (U.S. CONST., ART. I, PAR. 4; N.J. CONST. ART. I, PAR. 7.).
>
> POINT II
>
> A REMAND FOR RESENTENCING IS REQUIRED BECAUSE THE SENTENCING JUDGE IMPOSED A LONGER PERIOD OF PAROLE INELIGIBILITY THAN REQUIRED UNDER N.J.S.A. 2C:35-5 WITHOUT ARTICULATING THE REASONS FOR THE ADDITIONAL PERIOD OF PAROLE INELIGIBILITY.

I.

Defendant argues the trial court erred by denying his request for an evidentiary hearing on his suppression motion, arguing the

warrant's supporting affidavit contained material falsehoods and demonstrated a reckless disregard for the truth. Additionally, defendant argues the search warrant did not establish probable cause. We disagree.

When reviewing a trial court's denial of a motion to suppress, we will "uphold the factual findings underlying the trial court's decision so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243 (2007) (citation omitted). We will only disturb the trial court's decision "if [it is] so clearly mistaken 'that the interests of justice demand intervention and correction.'" Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We must focus on "whether the motion to suppress was properly decided based on the evidence presented at that time." State v. Gibson, 318 N.J. Super. 1, 9 (App. Div. 1999).

A defendant challenging the validity of a search warrant must "make[] a substantial preliminary showing of material misstatements in a search warrant affidavit, made knowingly or with [a] reckless disregard for the truth." State v. Howery, 80 N.J. 563, 566 (citing Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)), cert. denied, 444 U.S. 994, 100 S. Ct. 527, 62 L. Ed. 2d 424 (1979). If defendant can prove, by a preponderance of the evidence, such a falsity exists, the warrant

is deemed invalid and all evidence seized pursuant to the search warrant must be suppressed. Ibid. (citing Franks, supra, 438 U.S. at 155, 98 S. Ct. at 2676, 57 L. Ed. 2d at 672). The defendant must support his or her allegations

> by an offer of proof including reliable statements by witnesses, . . . and they must be provided by a preponderance of the evidence. Finally, the misstatements claimed to be false must be material to the extent that when they are excised from the affidavit, that document no longer contains facts sufficient to establish probable cause.
>
> [Id. at 567-68 (citing Franks, supra, 438 U.S. at 171, 98 S. Ct. at 2684, 57 L. Ed. 2d 682).]

Defendant challenges the search warrants, citing "several material misstatements" concerning the CI's description of defendant. The CI described defendant as 6'5", 220 pounds, and between 30 to 35 years old. Defendant argues he is 6'3", 335 pounds, and is 28 years old. Additionally, defendant argues the CI failed to mention his most distinctive feature: his long braids. Defendant argues the CI's information demonstrates material misstatements in the affidavit. We disagree.

The CI's description of defendant was reasonably close to defendant's true characteristics, but regardless of his description of defendant, the CI was able to correctly identify defendant as the man he knew as "Cork" from defendant's Motor

8

Vehicle picture. If the CI's initial description of defendant were stricken from the affidavit, there would still be sufficient information to support a finding of probable cause based upon the CI's identification of defendant's picture. See State v. Goldberg, 214 N.J. Super. 401, 406 (App. Div. 1986) (holding if probable cause would still exist despite the inaccurate information the defendant is not entitled to an evidentiary hearing), certif. denied, 107 N.J. 118 (1987).

Next, defendant argues the affidavit omitted that the second address in the search warrant was in fact a gambling house, frequented by many people. Defendant argues the affidavit does not establish defendant had control or dominion over the property and fails to indicate how many people were inside the second address during the CI's alleged controlled buys. We disagree and find defendant's argument to be irrelevant. The surveillance team observed the CI call defendant to arrange a time to purchase cocaine, the officers observed defendant leave the residential address and drive to the second address he provided to the CI, and observed defendant enter the second address. The CI then entered the second address, without cocaine, and came out and met Detective Searing with the purchased cocaine. The affidavit supported a finding of probable cause that defendant was the "Cork" the CI stated was dealing cocaine.

Last, defendant argues Detective Perea's observations repeated in the affidavit lack credibility because of an unrelated incident and all observations made by him must be stricken from the record. Without Detective Perea's observations, defendant argues, probable cause for the search warrant is lacking. The trial court rejected this argument, because there existed sufficient probable cause to connect defendant to the residential address, in light of the other officers who witnessed defendant leave the second address and drive back to the residential address. If all portions of Detective Perea's observations were stricken from the affidavit, probable cause supports the search warrant in light of the totality of observations reported by other officers in the surveillance team.

Defendant's argument that statements in the affidavit constitute material misrepresentations or reckless disregard for the truth is not supported by the record. The trial court's denial of defendant's motion to suppress and seek a <u>Franks</u> hearing was not an abuse of discretion.

Defendant also argues the affidavit failed to establish probable cause to search the two address, defendant's person, and the two cars. We disagree.

We give substantial deference to a judge's decision to issue a search warrant. <u>State v. Keyes</u>, 184 <u>N.J.</u> 541, 554 (2005). We

presume a search warrant to be valid and the burden is on the defendant to prove "there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable." State v. Valenica, 93 N.J. 126, 133 (1983). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" Keyes, supra, 184 N.J. at 554 (quoting State v. Jones, 179 N.J. 377, 389 (2004)).

For a search warrant to be valid, a judge must find there is probable cause, which generally "means less than legal evidence necessary to convict though more than mere naked suspicion." State v. Sullivan, 169 N.J. 204, 210-11 (2001) (quoting State v. Mark, 46 N.J. 262, 271 (1966)). Courts must consider the totality of the circumstances in determining whether there was probable cause for a search warrant. Id. at 212.

Probable cause may be based upon information received from informants, so long as there is "substantial evidence in the record to support the informant's statements." Keyes, supra, 184 N.J. at 555; see also Jones, supra, 179 N.J. at 399; Sullivan, supra, 169 N.J. at 212-13. The court "must consider the 'veracity and basis of knowledge' of the informant as part of its 'totality' analysis." Jones, supra, 179 N.J. at 389 (quoting State v. Novembrino, 105 N.J. 95, 123 (1987)). "A deficiency in one of those factors 'may be compensated for, in determining the overall

reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" State v. Zutic, 155 N.J. 103, 110-11 (1998) (quoting Illinois v. Gates, 462 U.S. 213, 233, 103 S. Ct. 2317, 2329, 76 L. Ed. 2d 527, 545 (1983)).

While an informant's veracity may be established by a showing of an informant's reliability in past police investigations, see Sullivan, supra, 169 N.J. at 213, "a few past instances of reliability do not conclusively establish an informant's reliability." State v. Smith, 155 N.J. 83, 94 (1998). As for basis of knowledge, "the court must decide whether the tip reveals 'expressly or clearly' how the informant became aware of the alleged criminal activity." Keyes, supra, 184 N.J. at 555-56 (quoting Smith, supra, 155 N.J. at 94). If such express disclosure is absent, "the nature and details revealed in the tip may imply that the informant's knowledge of the alleged criminal activity is derived from a trustworthy source." Smith, supra, 155 N.J. at 94. Police corroboration of an informant's tip "is an essential part of the determination of probable cause" as it "ratif[ies] the informant's veracity and validate[s] the truthfulness of the tip." Id. at 95.

Defendant argues the State failed to establish the CI's veracity and basis of knowledge because the CI had not previously provided any information to the MCPO that led to the arrests of

any individuals. Defendant argues the CI's description of him was inaccurate and the police never corroborated the CI's claim defendant was selling drugs.

We begin by addressing the CI's basis of knowledge. The CI had previously purchased cocaine from defendant, establishing the tip reflects first-hand knowledge. Additionally, the detectives coordinated three controlled buys to corroborate the CI's statements prior to applying for the search warrant. Each of the controlled buys were conducted in the same manner, and each time the detectives observed defendant entering and exiting the second address. While a controlled buy in and of itself does not establish probable cause, see Sullivan, supra, 169 N.J. at 216, the controlled buys in the present case were further supported by the CI's other information. As to the CI's description of defendant, we previously stated the description provided was reasonably close to the attributes of defendant. Moreover, the CI's identification of defendant from his Motor Vehicle picture provided a sufficient basis for his knowledge the man in the picture was the defendant.

As to the CI's veracity, the fact the CI had never been used by the MCPO before does not negate reliability. Because the CI had a direct, personal basis of knowledge for the tip and the detectives corroborated the CI's tip, the CI's basis of knowledge

13

and veracity were sufficient to find probable cause to issue the search warrants.

                                   II.

Defendant argues the trial court did not provide an explanation as to why the court imposed a period of parole ineligibility beyond what was statutorily required. We agree and are constrained to remand to the trial judge to explain reasons for imposing the four-year period of parole ineligibility.

Defendant pled guilty to N.J.S.A. 2C:35-5(a)(1), which carries a minimum period of parole ineligibility between one-third and one-half of the sentence imposed. See N.J.S.A. 2C:35-5(b)(1). For a ten-year sentence, the minimum period of parole ineligibility would be three and a half years. Here, the sentencing judge imposed four years but did not provide a statement of reasons as to why he did not impose the minimum amount required. We remand the matter to the sentencing judge to provide his reasoning for imposing a four-year period of parole ineligibility.

Affirmed in part and remanded in part, consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                    A-5187-14T2