**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0878-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LUIS A. GONZALEZ,
a/k/a LUIS GONZALEZ,
and LUIS A. GONZALEZ, JR.,

    Defendant-Appellant.

_____

Submitted January 12, 2022 – Decided April 4, 2022

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 17-10-0674.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (Gretchen A. Pickering, Senior Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Luis Gonzalez pled guilty to second-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(2). In accordance with his plea agreement, he was sentenced to ten years in prison with five years of parole ineligibility. He appeals from an order denying his motion to suppress the drugs seized from his car, arguing that the trial court erred in not conducting a complete evidentiary hearing. Because there were disputed issues concerning why and on what grounds the police stopped defendant's vehicle, we vacate the order denying the motion to suppress and remand for a full evidentiary hearing.

I.

The State contends that in May and June 2017, defendant was the subject of a narcotics investigation. On June 20, 2017, members of the Wildwood Police Department's Street Crimes Unit observed defendant and another man walk off the boardwalk and get into a blue Hyundai Sonata, which was parked in a lot near the boardwalk with its windows rolled up. Shortly after, the other man exited the vehicle and walked back to the boardwalk. Some police officers followed the other man, but he was not located or identified.

2

Meanwhile, defendant drove away. Police Officer James Stevens, who was a member of the Street Crimes Unit, had observed defendant and the other man while they were in the parking lot. Stevens radioed Officer Andrew Kolimaga and directed him to stop the Sonata. Kolimaga stopped the car several blocks away from the parking lot. The State asserted that defendant's car was stopped for two reasons: Officer Stevens believed he had witnessed a drug transaction in the parking lot and defendant's vehicle had illegal tinted windows.

After defendant's vehicle was pulled over, Officer Stevens and several other officers joined Kolimaga. Three officers reported that they smelled raw marijuana when they approached defendant's car. Defendant was detained while a K-9 unit was summoned to the scene. The responding dog gave two indications of narcotics near the driver's side door and trunk of the Sonata. Defendant's car was impounded, he was given two motor vehicle tickets for improper safety glass and narcotics in a motor vehicle, and he was released at the scene of the stop.

Officer Stevens then prepared an affidavit in support of an application for a warrant to search defendant's car. The warrant was granted, and the search of the vehicle revealed approximately 1900 bags containing heroin or crystal

3

methamphetamine, a digital scale, and packing materials. Thereafter, defendant was indicted for eight second- and third-degree drug-related crimes.

Defendant moved to suppress the drugs and other physical evidence that had been seized from his car. On March 12, 2018, a hearing was conducted on defendant's motion. At the hearing, defendant argued that there were no lawful grounds for stopping his vehicle. He did not present any evidence that the affidavit in support of the warrant was improper.

The State was prepared to call a witness, presumably Officer Stevens. Nevertheless, no witness testified on behalf of the State at the hearing. Instead, the State submitted a police report, marked as exhibit S-3, and the affidavit submitted in support of the warrant application, marked as exhibit S-2. The trial court accepted both of those documents without any testimony and relied on those documents in making its findings.

Defendant testified at the hearing. He denied that he had engaged in a drug transaction on the day that his vehicle was stopped. Instead, he claimed that he had gone to Wildwood to meet someone he knew who could get him a discounted bracelet to go on rides along the boardwalk. Defendant explained that he had planned to give the bracelet to his stepdaughter for her upcoming birthday.

4

Defendant also testified that when he was first stopped by the police, no one told him why his car had been pulled over. He explained that after he had been detained for approximately forty minutes, one of the officers told him he had been directed to pull defendant's car over. The officer then added "you have tinted windows." Defendant disputed that the tinted windows could have been a basis for the stop, testifying that his windows were down just before he was pulled over.

The trial court denied defendant's motion to suppress, finding that the police had reasonable articulable suspicion to stop defendant's car based on two grounds: defendant's car had illegal tinted windows and the police had a reasonable suspicion that defendant had engaged in a drug transaction. In making those findings, the trial court did not assess the credibility of defendant's testimony. Instead, the court relied on the police report and affidavit to find that Officer Stevens had observed a drug transaction, observed that the vehicle had tinted windows, and relayed those observations to Officer Kolimaga, who stopped the car. The trial court relied in part on defendant's testimony in making the finding about the tinted windows. Defendant testified that when he had entered his car in the parking lot, the windows were up. Accordingly, the trial court reasoned that Officer Stevens had observed the tinted windows.

5

The trial court also held that defendant had not presented any evidence to dispute the affidavit submitted in support of the warrant application. Accordingly, the court held that there was no basis to challenge the validity of the warrant, nor was there a need to conduct a Franks hearing to evaluate the affidavit. See Franks v. Delaware, 438 U.S. 194 (1978).

Following the denial of his motion to suppress, defendant pled guilty to second-degree possession of heroin with intent to distribute. In accordance with his constitutional rights, defendant now challenges the denial of his motion to suppress the physical evidence seized from his car.

## II.

On appeal, defendant argues that the stop of the vehicle was illegal, and everything obtained thereafter must be suppressed as fruits of an illegal seizure. He also contends that the trial court erred in denying his motion without a full evidentiary hearing and without the State establishing the legality of the stop:

> THE TRIAL COURT'S DECISION DENYING THE MOTION TO SUPPRESS THE FRUIT OF A WARRANTLESS SEIZURE WITHOUT AN EVIDENTIARY HEARING SHOULD BE REVERSED BECAUSE THERE WERE CONTESTED MATERIAL ISSUES OF FACT THAT REQUIRED THE STATE TO MEET ITS BURDEN OF PROOF AT AN EVIDENTIARY HEARING.

A-0878-19

When a law enforcement officer stops a motor vehicle, the stop is a seizure that must comply with the constitutional protections afforded by the federal and New Jersey Constitutions. State v. Atwood, 232 N.J. 433, 444 (2018); State v. Sloane, 193 N.J. 423, 430 (2008). "Under both the Fourth Amendment [of the United States Constitution] and Article I, Paragraph 7 [of the New Jersey Constitution], ordinarily, a police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense to justify a stop." State v. Scriven, 226 N.J. 20, 33-34 (2016); see also State v. Locurto, 157 N.J. 463, 470 (1999). "The State bears the burden of proving that an investigatory stop is valid." Atwood, 232 N.J. at 444 (citing State v. Maryland, 167 N.J. 471, 489 (2001)).

"The proper mechanism through which to explore the constitutionality of warrantless police conduct is an evidentiary hearing." Id. at 445 (first citing N.J.R.E. 104; and then citing State v. Gamble, 218 N.J. 412, 419 (2014)). When there are disputed material facts, the State must present witnesses at the evidentiary hearing to substantiate its basis for the challenged warrantless conduct, "and the defense is afforded the opportunity to confront and cross-

A-0878-19

examine the State's witnesses." Ibid.; see also R. 3:5-7(c) (requiring testimony to be taken in open court "[i]f material facts are disputed").

In Atwood, the Court held that the State had not meet its burden to justify a pre-warrant seizure with the affidavit submitted in support of a warrant. 232 N.J. at 446. The Court explained that the State has the burden of demonstrating reasonable and articulable suspicion for the seizure because "[s]earch warrants are prospective in nature—they authorize the taking of action. A later-obtained search warrant does not retroactively validate preceding warrantless conduct that is challenged through a suppression motion focused on the legitimacy of the seizure that gave rise to a later search." Id. at 438. The Court went on to explain that "[t]he State must bear the burden of proving the legitimacy of the seizure that led to a later warrant and search—in this case the stop." Ibid. The Court also reiterated that New Jersey "courts have recognized the importance of the ability to question witnesses in case of factual disputes." Id. at 445 (citing State v. Green, 346 N.J. Super. 87, 101-02 (App. Div. 2001)).

At defendant's hearing, he disputed several material facts. First, defendant testified that he had not engaged in a drug transaction before his vehicle was stopped. Consequently, the State had the burden to show that Officer Stevens

8

had a reasonable belief that he had observed a drug transaction and that those observations were the basis for the stop.

Second, defendant also disputed that his car was stopped because it had tinted windows. He testified that before the stop, his windows were down. Moreover, the record at the suppression hearing contained no verified information from Officer Kolimaga stating the basis for his stop of defendant's car.

In denying defendant's motion, the trial court relied on the unverified police report and an affidavit. By relying on those documents, the court deprived defendant of an opportunity to challenge the validity of the grounds for the stop through cross-examination of Officer Kolimaga, who had made the stop, and Officer Stevens, who had prepared the report and affidavit and who had claimed to have observed a drug transaction.

Both the report and affidavit were hearsay. See N.J.R.E. 801 (defining "hearsay" as an out-of-court statement offered to prove the truth of the matter asserted in the statement). The police report includes statements made by a confidential informant; those statements are also hearsay. State v. Keyes, 184 N.J. 541, 556 (2005). Although "hearsay is permissible in suppression hearings, subject to N.J.R.E. 104(a)," the court must still decide how much weight to give

that evidence when available firsthand testimony is not presented. <u>State v. Watts</u>, 223 N.J. 503, 519 n.4 (2015). In that regard, the record before us does not contain any certification verifying the authenticity of the affidavit. The police report, which was unverified, is hearsay and the State cited nothing to support its admission into evidence at the hearing. Without an evidentiary hearing, defendant had no opportunity to challenge the reliability of that evidence "by testing [it] in the crucible of cross-examination." <u>State ex rel. J.A.</u>, 195 N.J. 324, 342-43 (2008) (alteration in original) (quoting <u>Crawford v. Washington</u>, 541 U.S. 36, 61 (2004)).

The police report does not say what Officer Stevens told Officer Kolimaga when he directed Kolimaga to stop defendant's car. We are left to assume that Stevens told Kolimaga that he had observed a drug transaction and tinted windows. The report stated: "[Defendant] was observed operating his vehicle with illegally tinted windows" and based on "my training, experience, and observations, I suspected [defendant] engaged in a [drug] transaction with [an unidentified man]. Accordingly, Ptlm. Andrew Kolimaga #85 was contacted by the [Street Crimes Unit] and requested to stop [defendant's] vehicle." The report does not say that Stevens told Kolimaga about his observations. Given that defendant disputed that he had engaged in a drug transaction or that his car had

been stopped because of the tinted windows, the court needed to conduct a full evidentiary hearing where the State proved that there was reasonable articulable suspicion for the stop.

On the current record, it is not clear that the stop was made because of the tinted windows. Given an opportunity to hear testimony elicited during cross-examination and to assess credibility, a fact-finder could conclude that the police were going to stop defendant's vehicle no matter what and the tinted windows were just a pretext, and possibly an after-the-stop justification. We are not suggesting that those are the facts; rather, we are holding that those potential issues need to be explored and ruled on after a full evidentiary hearing.

Moreover, the New Jersey Supreme Court has cautioned that police claims that they stopped a vehicle for a motor-vehicle offense need to be scrutinized. For example, when a stop was based on an officer's erroneous belief that a driver was violating taillight laws, the Court held that the stop was unconstitutional because the officer's mistake of law was not "objectively reasonable." State v. Sutherland, 231 N.J. 429, 431-32 (2018). Similarly, the Court found another stop was not justified when it was based on an officer's mistaken belief that the driver was violating the state's "high-beam" statute because the officer had no

11

"reasonable, articulable, and particularized suspicion for making the stop." Scriven, 226 N.J. at 34-36, and 38.

In addition, on the current record, it is not clear that the observations made by Officer Stevens gave rise to a reasonable suspicion that a drug transaction had occurred. Defendant testified that when he and the other man were in his vehicle in the parking lot, his windows were up, and no one could see inside the vehicle. At a full evidentiary hearing, the State will have to present evidence concerning Officer Steven's actual observations and whether he reasonably suspected that a drug transaction had taken place in the vehicle. We are cognizant that the State also relies on additional observations made during its investigation before the vehicle stop. That information, however, is contained only in the police report and affidavit and there was no testimony about the investigation at the March 12, 2018 hearing.

In summary, the State had the burden to prove that Kolimaga had lawfully stopped defendant's vehicle. Given defendant's testimony disputing material facts, it was an error for the trial court to make findings based on a police report and affidavit without hearing testimony and without giving defendant an opportunity to cross-examine the police officer who wrote those documents.

A-0878-19

Accordingly, we vacate the order denying defendant's motion to suppress and remand for a full evidentiary hearing.

We are not vacating defendant's conviction. The trial court is to conduct a full evidentiary hearing on the motion to suppress. If the evidence is suppressed, defendant can move to withdraw his guilty plea. If the evidence is not suppressed, defendant can decide if he wants to appeal from the ruling following the remand.

On remand, the trial court is directed to enter a written order on the motion to suppress. In that regard, we note that the court did not enter a written order denying defendant's original motion to suppress. Instead, the only thing that we have in the record is a clerk's order stating "a written[o]rder will not be submitted at this time or in the future" and "that the motion decision has been entered into Promis Gavel[,]" and can be "viewed in Promis Gavel." Appeals are taken from court orders. Hayes v. Delamotte, 231 N.J. 373, 387 (2018). Therefore, on remand the trial court must prepare and file a written order that clearly states its ruling.

The order denying the motion to suppress is vacated and the matter is remanded for a full evidentiary hearing on defendant's motion to suppress.

13

We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14