**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5558-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MARK A. BRANTLEY ,

     Defendant-Appellant.

_____

> Submitted December 16, 2019 – Decided January 14, 2020
>
> Before Judges Messano and Vernoia.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-02-0376.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Margaret Ruth McLane, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (Eric M. Snyder, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Following the trial court's denial of his motion to suppress physical evidence seized from his apartment pursuant to a search warrant, defendant Mark A. Brantley pleaded guilty to second-degree possession of a firearm while possessing a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:39-4.1(a), and second-degree possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:39-5(a)(1) and -5(b)(2). In accordance with the plea agreement, the court sentenced defendant to an aggregate sixteen-year sentence with a six-and-one-half-year period of parole ineligibility. Defendant appeals from the order denying his motion to suppress physical evidence.

I.

On August 8, 2017, Detective Victor Delgado presented a Superior Court judge with an affidavit supporting a request for a warrant authorizing the search of defendant, a 1996 blue GMC van registered to defendant's girlfriend, and defendant's Handy Street, New Brunswick apartment. The affidavit explained Detective Delgado's training and his experience as a police officer and in his current assignment in the New Brunswick Police Department's Narcotics Intelligence Unit.

The affidavit stated that during the prior "several weeks," Detective Delgado received information from two confidential informants that defendant was "selling quantities of heroin and cocaine" in New Brunswick from his Handy Street apartment and from various vehicles, including "a blue GMC van," that he used to transport the heroin and cocaine. The informants identified three New Brunswick street intersections "well known to the . . . Police Department for the open use and sales of narcotics" where defendant made "street level sales." The informants reported defendant used the GMC van to "hide his narcotics when he makes [those] sales." According to Detective Delgado, the confidential informants "provided information in the past that . . . led to numerous arrest[s] and convictions for narcotics related offenses," and they identified pictures of defendant as the individual engaged in street level sales of narcotics.

In the affidavit, Detective Delgado also noted defendant provided the Handy Street apartment address as his residence in prior interactions with the police and while on parole following a federal conviction. The affidavit explained defendant had prior arrests, convictions, and prison sentences for narcotics-related offenses.

Detective Delgado also detailed three controlled purchases of suspected narcotics from defendant. The first controlled purchase occurred during the third week of July 2017. Prior to the transaction, the first confidential informant contacted defendant by cellphone and ordered a quantity of heroin. Defendant instructed the informant to meet him at one of the intersections. The informant was searched and found not to have any narcotics, and then he proceeded to the intersection while observed at all times by Detective Delgado. The informant met defendant at the designated intersection, and, after they spoke, defendant entered and then exited a nearby parked van and handed suspected heroin to the informant. The informant gave defendant currency that had been supplied by Detective Delgado for the controlled purchase. The informant returned to a pre-arranged location while under Detective Delgado's constant observation, turned over the suspected heroin that he or she purchased, and advised Detective Delgado he purchased the heroin from defendant.

The affidavit also described two controlled purchases of cocaine made by the second confidential informant. Both purchases occurred during the last week of July 2017. In each instance, the informant first contacted defendant by telephone to arrange the purchase, and Detective Delgado searched the informant with negative results for the possession of any narcotics, gave the

4

informant currency for the purchase, and maintained constant surveillance of the informant during the transactions with defendant and until the informant turned over the purchased cocaine following the transaction.

During the first of the two controlled buys by the second informant, defendant told the informant to meet him at the Handy Street apartment. The informant went to the apartment, where defendant was observed by Detective Delgado "exiting his residence and walk[ing] towards his driveway where he met the . . . informant." Detective Delgado observed defendant engage in a brief conversation with the informant and hand the informant suspected cocaine in exchange for currency. The informant returned to a pre-arranged location, provided the suspected cocaine to Detective Delgado, and reported purchasing the cocaine from defendant at the Handy Street apartment.

The second informant's other controlled buy of cocaine was also arranged in a telephone call with defendant during which he directed the informant to meet him at a Handy Street intersection. Under Detective Delgado's constant surveillance, the informant went to the designated intersection where defendant was observed arriving in a blue GMC van. Defendant exited the van, spoke with the informant, and "grabbed suspected cocaine from the front of his pants and handed it over to the . . . informant" in exchange for currency. The informant

returned to a pre-arranged location, where he or she relinquished the suspected cocaine to Detective Delgado and reported purchasing the cocaine from defendant.

The search warrant affidavit also described Detective Delgado's additional investigation, which included surveillance of defendant "meeting with suspected buyers" at his Handy Street apartment. More particularly, Detective Delgado observed defendant briefly speaking with suspected buyers outside of the apartment, then briefly enter and exit the apartment and hand suspected narcotics to suspected buyers. Detective Delgado also observed defendant using the blue GMC van and other rental vehicles at various intersections in areas "well known for open use [and] sales of narcotics." Detective Delgado observed defendant speak briefly with suspected buyers, briefly enter and exit the nearby vehicles, and then engage in an exchange with a suspected buyer. Detective Delgado represented that defendant "would continue this behavior during all hours of the day," and that, within three days of the submission of the search warrant affidavit, one of the informants "confirmed that [defendant] [was] still actively selling heroin and cocaine out of his residence" at the Handy Street apartment.

Finding the affidavit established probable cause, the court issued search warrants for defendant, the blue GMC van, and defendant's Handy Street

apartment. It appears that execution of the warrants resulted in the seizure of cocaine, heroin, PCP, marijuana, synthetic marijuana, and a handgun from the Handy Street apartment.[1]

Defendant moved to suppress the physical evidence seized from his apartment. In his letter brief in support of the motion, defense counsel argued defendant was entitled to a Franks[2] hearing because the search warrant affidavit for the apartment "is clearly based on incredible facts." He also averred the affidavit misstated that Detective Delgado observed the GMC van at different locations and that it was used to facilitate various suspected narcotics transactions, including when the third controlled buy was made, because an August 11, 2017 police photograph of the van showed it was "incapacitated" and "not drivable." Defense counsel asserted the first informant's claim that the first

---

[1] The record on appeal does not include a list of the items seized by the police pursuant to the search warrants. Defendant moved for suppression of physical evidence seized only from his apartment, and his brief on appeal challenges only the seizure of items from his apartment. We therefore do not consider the propriety of the searches and seizures, if any, from defendant or the GMC van pursuant to the search warrants, and we limit our discussion to the search warrant for the apartment. An issue not briefed on appeal is deemed waived. Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011); Jefferson Loan Co., Inc. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008).

[2] Franks v. Delaware, 438 U.S. 154 (1978).

controlled buy was arranged over defendant's cellphone was "not credible" because the State had not provided any cellphone evidence. He also asserted that during the requested Franks hearing, photographs would establish Detective Delgado did not truthfully state the informant "was never out of [his] view" when the second controlled buy was made at defendant's apartment. Defense counsel's allegations were untethered to an affidavit or other competent evidence and did not allege the search warrant affidavit included either a deliberate falsehood or was made with a reckless disregard for the truth.

At oral argument on defendant's request for a Franks hearing, defendant proffered photographs that his counsel asserted supported his claim the search warrant affidavit contained false information. The court granted defendant's request that he testify in support of his claim the search warrant contained falsehoods sufficient to warrant a separate Franks hearing.

Defendant briefly testified on direct examination by his counsel. He denied receiving a phone call "to set up [the] drug deal" that was described in Detective Delgado's affidavit as the second controlled buy. He also denied receiving any discovery materials from the State "that has [his] telephone number in it." He also testified about photographs that he claimed supported his contention Detective Delgado could not have seen the first controlled buy occur

8

at his apartment. He further testified about photographs showing the GMC van with a flat tire, which he asserted demonstrated the van could not have been used in the manner described in the search warrant affidavit.[3]

On cross-examination, the prosecutor asked defendant to provide the telephone number he had in July 2017. Defense counsel objected, and the court overruled the objection.[4] Defendant then refused to answer the question, asserting his Fifth Amendment right against self-incrimination. The court explained that it typically required an affidavit supporting a <u>Franks</u> hearing request, but in this case it allowed defendant to testify "under oath . . . to lay a proffer or to at least establish the need for a <u>Franks</u> hearing." Based on defendant's refusal to respond to the State's question on cross-examination, the

---

[3] The photographs were not moved into evidence during the proceeding and are not included in the record on appeal.

[4] The court overruled defense counsel's objection, which was based on the assertion that the question sought irrelevant information. We reject defendant's argument the court abused its discretion by overruling the objection. The question called for information about defendant's phone number at the time of the second controlled buy. The question sought information that had "a tendency in reason to prove or disprove a fact of consequence to the determination of" whether defendant was entitled to a <u>Franks</u> hearing – whether defendant had a phone and whether his phone number was the same as that listed in the police report he had been provided during discovery. <u>See</u> N.J.R.E. 401.

court struck defendant's direct testimony. Defendant offered no other evidence supporting his Franks hearing request.

In a detailed opinion issued from the bench, the court denied the request for the Franks hearing. The court summarized the information contained in the search warrant affidavit, including the details concerning the three controlled buys, and explained that during execution of the search warrants on August 11, 2017, controlled dangerous substances and several firearms were seized from defendant's apartment, and controlled dangerous substances were seized from defendant.[5]

The court reasoned that defendant failed to establish entitlement to a Franks hearing because he did not submit evidence supporting his claim the search warrant affidavit contained false statements. Although it struck defendant's testimony, the court also found defendant's direct testimony did not establish Detective Delgado's affidavit contained any false statements. The court further determined that even if the allegedly false statements were excised from the affidavit, Detective Delgado presented sufficient facts establishing

---

[5] The court noted defendant shared the apartment with his co-defendant. We again observe defendant does not challenge the court's finding he was not entitled to a Franks hearing based on any claim Detective Delgado's affidavit contained false statements establishing probable cause to search defendant's person.

A-5558-17T3

probable cause to search defendant's apartment. The court rejected defendant's claim the affidavit did not establish probable cause because there was no testing of the items purchased during the three controlled buys establishing they were controlled dangerous substances. The court concluded, even without such testing, the affidavit established probable cause the items were controlled dangerous substances. The court denied defendant's request for a <u>Franks</u> hearing and his motion to suppress the physical evidence seized during the execution of the search warrants.

Defendant pleaded guilty to possession of cocaine with intent to distribute and possession of a firearm while possessing cocaine with intent to distribute. The court sentenced defendant in accordance with his plea agreement with the State. This appeal, challenging the court's order denying his motion to suppress physical evidence, followed. <u>See</u> <u>R.</u> 3:5-7(d).

Defendant offers the following arguments for our consideration:

> POINT I
>
> THE COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A <u>FRANKS</u> HEARING BECAUSE THERE WAS A SUBSTANTIAL PRELIMINARY SHOWING THAT THE SWEARING OFFICER ACTED IN RECKLESS DISREGARD OF THE TRUTH BY INCLUDING FALSE STATEMENTS IN THE WARRANT AFFIDAVIT.

THE SEARCH WARRANT AFFIDAVIT DID NOT PROVIDE PROBABLE CAUSE TO SEARCH BECAUSE THE VERACITY AND BASIS OF KNOWLEDGE OF THE ANONYMOUS INFORMANTS UPON WHICH THE AFFIDAVIT RELIED WERE NOT ESTABLISHED.

II.

Defendant argues the court erred by denying his request for a Franks hearing. He claims he made a substantial preliminary showing Detective Delgado's affidavit contained false information. He further asserts that because he made a substantial preliminary showing the affidavit contained false information and Detective Delgado "relie[d] almost exclusively on information from the two alleged [confidential informants] . . . the [informants] must also testify" at the Franks hearing. He also claims for the first time that this court should reverse the court's denial of his request for a Franks hearing and remand for the court to conduct an in camera hearing to determine the veracity of the confidential informants.

We reject defendant's claim the court erred by denying his request for a Franks hearing. We review a court's decision regarding the need for an evidentiary hearing for an abuse of discretion. State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009). A court abuses its discretion when its

12

"decision [is] made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." United States v. Scurry, 193 N.J. 492, 504 (2008) (citing Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Where, as here, a defendant challenges the veracity of a search warrant affidavit, a Franks hearing is required only "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." Franks, 438 U.S. at 155-56. The defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." State v. Howery, 80 N.J. 563, 567 (1979) (quoting Franks, 438 U.S. at 171).

To obtain a Franks hearing, a defendant's allegations should be supported by affidavits or other reliable statements; "[a]llegations of negligence or innocent mistake are insufficient." Broom-Smith, 406 N.J. Super. at 241 (quoting Franks, 438 U.S. at 171). The allegations "must be proved by a preponderance of the evidence." Howery, 80 N.J. at 568. A defendant must also demonstrate that absent the alleged false statements, the search warrant

lacks sufficient facts to establish probable cause. <u>Ibid.</u> If a search warrant affidavit contains sufficient facts establishing probable cause even when the alleged false statements are excised, a <u>Franks</u> hearing is not required. <u>Franks</u>, 438 U.S. at 171-72.

Here, the court correctly denied defendant's request for a <u>Franks</u> hearing. Defendant failed to provide an affidavit or any other reliable statements constituting a substantial showing that Detective Delgado's affidavit contained deliberate falsehoods or statements made in reckless disregard for the truth. Defendant's motion was initially based only on the arguments of his counsel, and, although defendant ultimately sought to support his motion by testifying on his own behalf, the court properly struck his testimony due to his refusal to answer questions during cross-examination by the State. <u>See</u> <u>State v. Feaster</u>, 184 N.J. 235, 248 (2005) ("When a witness's direct testimony concerns a matter at the heart of a defendant's case, the court should strike that testimony if the witness relies on the privilege against self-incrimination to prevent cross-examination."); <u>see also</u> <u>State v. Bogus</u>, 223 N.J. Super. 409, 422 (App. Div. 1988) ("It is well-settled that a defendant who voluntarily takes the stand and offers testimony in his own behalf exposes himself to cross-examination and the possibility of being compelled to testify against himself.").

"The limitations imposed by <u>Franks</u> are not insignificant."  <u>Howery</u>, 80 N.J. at 567.  A defendant's burden is substantial because "a <u>Franks</u> hearing is not directed at picking apart minor technical problems with a warrant application[,]" but rather, "it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents[.]"  <u>Broom-Smith</u>, 406 N.J. Super. at 240.  Defendant's refusal to answer questions on cross-examination, and the court's proper striking of his direct testimony, resulted in a record devoid of any evidence or information satisfying his burden for a <u>Franks</u> hearing.  <u>See</u> <u>Id.</u> at 240-41.

Defendant failed to make a substantial showing—indeed, any showing— Detective Delgado's affidavit included deliberate falsehoods or was made with reckless disregard for the truth, <u>see</u> <u>Howery</u>, 80 N.J. at 567, and defendant's refusal to participate in the State's cross-examination made it impossible for the court to determine if his direct testimony established by a preponderance of the evidence that the affidavit contained knowing falsehoods, <u>see</u> <u>State v. Branch</u>, 182 N.J. 338, 348 (2005) (explaining direct testimony generally cannot be considered reliable unless tested in the "crucible of cross-examination").  The

motion court therefore correctly determined defendant failed to establish his entitlement to the requested <u>Franks</u> hearing.[6]

"A search that is executed pursuant to a warrant is 'presumptively valid,' and a defendant challenging the issuance of that warrant has the burden of proof to establish a lack of probable cause 'or that the search was otherwise unreasonable.'" <u>State v. Boone</u>, 232 N.J. 417, 427 (2017) (quoting <u>State v. Watts</u>, 223 N.J. 503, 513-14 (2015) (citation omitted)). Defendant did not make a sufficient showing that Detective Delgado's affidavit contained deliberate falsehoods or statements made with reckless disregard for the truth so as to warrant the requested <u>Franks</u> hearing.

We reject defendant's argument that if a <u>Franks</u> hearing was not required, the court should have otherwise conducted an <u>in camera</u> hearing to determine the veracity of the confidential informants in accordance with a procedure

---

[6] Because the court correctly determined the record did not include sufficient evidence to require a <u>Franks</u> hearing, it is unnecessary to address in detail the court's findings that defendant's direct testimony, which the court struck, did not establish the search warrant affidavit contained deliberate falsehoods necessitating a <u>Franks</u> hearing; and, even if the statements in the affidavit defendant alleged were false were excised, the affidavit nonetheless established probable cause to search defendant's apartment. We observe only that those findings are supported by the evidence, including defendant's direct testimony, and we therefore would otherwise find no basis in those findings to reverse the court's order denying the suppression motion.

16

established by the Washington Supreme Court in <u>State v. Casal</u>, 699 P.2d 1234 (Wash. 1985). We do not consider the merits of the argument because it was not raised before the motion court, does not pertain to the court's jurisdiction, and does not involve an issue of great public interest. <u>See</u> <u>State v. Robinson</u>, 200 N.J. 1, 20 (2009).

Defendant also contends the search warrant affidavit did not establish probable cause for the issuance of the search warrants because it failed to demonstrate the reliability and basis of knowledge of the two informants. Defendant, however, ignores the affidavit explained the informants had previously provided information leading to arrests and convictions for narcotics related offenses, and Detective Delgado's personal observations of the three controlled buys made by the informants and his independent observations of defendant's participation in suspected narcotics transactions established probable cause for the search warrants.

Information provided by a confidential informant may support a finding of probable cause for a search warrant where the information is corroborated by a police officer. <u>State v. Keyes</u>, 184 N.J. 541, 556 (2005). "[R]elevant corroborating facts may include a controlled drug buy performed on the basis of the tip, positive test results of the drugs obtained, records confirming the

17

informant's description of the target location, the suspect's criminal history, and the experience of the officer who submitted the supporting affidavit."  Ibid. Although no fact by itself establishes probable cause, "a successful controlled drug buy 'typically will be persuasive evidence in establishing probable cause.'" Ibid. (quoting State v. Sullivan, 169 N.J. 204, 217 (2001)).

Here, probable cause was not founded solely on the information supplied by the confidential informants.  As described by Detective Delgado, probable cause was supported by his observations of three separate controlled buys of narcotics from defendant; his observations of defendant's participation in other suspected narcotics transactions at defendant's apartment and at street locations known for narcotics sales; defendant's prior criminal record; and Detective Delgado's training and experience as a law enforcement officer.  Contrary to defendant's contention, and as correctly found by the motion court, the search warrant affidavit included ample evidence supporting "a practical, common sense determination [that], given all of the circumstances, there [was] a fair probability that contraband or evidence of a crime [would] be found in [the] particular place[s]" for which the search warrants were issued.  State v. Marshall, 199 N.J. 602, 610 (2009) (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)); see also State v. Jones, 179 N.J. 377,  389 (2004) (noting the court must

consider "the totality of the circumstances" in determining if there is probable cause for a search).

We also reject defendant's claim that probable cause was not established because there was no evidence the items purchased in the three controlled buys were tested to confirm they were controlled dangerous substances. A positive test for suspected narcotics is not essential to a finding of probable cause that items are controlled dangerous substances. See Jones, 179 N.J. at 394 (explaining that testing an item purchased during a controlled buy to confirm it is a controlled dangerous substance is not essential to a probable cause finding where the totality of the circumstances establish probable cause to believe the item is a controlled dangerous substance). The totality of the facts presented here—including the telephone calls with defendant arranging the purchases of heroin and cocaine from him, the circumstances under which the controlled buys were made, and Detective Delgado's training and experience—established probable cause to believe the purchases items were illicit narcotics. Although the items purchased during the three controlled buys were not tested, "[t]he circumstances detailed in the warrant application plainly indicated that the sole purpose of the [controlled buys] between the informant[s] and [defendant] . . . was to exchange money for drugs." Id. at 395.

To the extent we have not expressly addressed any of defendant's remaining arguments, they are without sufficient merit to warrant discussion in a written opinion.[7]  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] In his criminal case information sheet and notice of appeal, defendant asserts that he appeals from his sentence, which he indicates is "excessive."  We do not consider the issue because it is not addressed in defendant's brief on appeal and is therefore deemed waived.  See Drinker Biddle & Reath LLP, 421 N.J. Super. at 496 n.5; Jefferson Loan Co., Inc., 397 N.J. Super. at 525 n.4.

A-5558-17T3