THE CITY OF CAMDEN, A MUNICIPAL CORPORATION, PROSECUTOR, v. LOCAL GOVERNMENT BOARD, DEFENDANT.

Submitted January 21, 1941—Decided July 25, 1941.

Before Justices CASE, DONGES and HEHER.

For the prosecutor, *John J. Crean* and *William J. Shepp.*

For the defendant, *David T. Wilentz,* Attorney-General, and *John F. Bruther,* Assistant Attorney-General.

The opinion of the court was delivered by

HEHER, J.  *Certiorari* was granted to review the judgment of the defendant Board sustaining the action of the Commissioner of Local Government in refusing approval of the budget adopted by the City of Camden for the year 1940. 125 *N. J. L.* 73.

The revenue anticipated for the budget year included $60,000 from the sale of real estate theretofore "acquired" by the municipality "for unpaid taxes," and $50,000 for rents from such properties.  The Commissioner deleted the first item, but increased the second to $80,000.

The propriety of the deletion is the sole question at issue. It is defended as the elimination of an improper "item of miscellaneous revenue," in that "a true anticipated revenue" of that class "under the Budget Act is an item which appears

for the first time in the budget of a given year, not as an account receivable arising from the transaction of a previous year, but which arises anew in each annual budget; such as interest and costs on delinquent taxes, franchise and gross receipts taxes, fines and penalties, fees and permits, &c." Thus, a distinction in this behalf is made between "an item which creates a new revenue each year and one which is a recovery of a revenue or an asset which occurred for the first time as such years before." The former is termed "new annual revenue" and the latter "the liquidation or collection of accounts receivable." It is said that the sales of "foreclosed properties" do not constitute "new revenues in that particular year, but are recoveries of assets of former years," and are therefore "not true anticipated miscellaneous revenues as defined in the budget act." *R. S.* 1937, 40:2-15, 40:2-17.

The question is one of statutory construction. *R. S.* 1937, 40:2-53, as amended by chapter 396 of the Laws of 1939 (*Pamph. L., pp.* 943, 946; *N. J. S. A.* 40:2-53), invests the Commissioner with jurisdiction to "determine upon the basis of information and data available whether: a. All estimates of revenue are reasonable, accurate, correctly stated and in accordance with the provisions of this chapter and the regulations of the board." *Section* 40:2-15 classifies "anticipated revenues" as "surplus revenue appropriated;" "miscellaneous revenues;" "receipts from delinquent taxes" (to the extent permitted by section 40:2-25, as amended by chapter 7 of the Laws of 1939 [*Pamph. L., p.* 18; *N. J. S. A.* 40:2-25] of this title); "amount to be raised by taxes;" and "dedicated revenues." Section 40:2-16 defines "surplus revenue" to include "receipts from miscellaneous revenues during any fiscal year which are in excess of the aggregate amount of the classified miscellaneous revenues as stated in the budget of such year." *Section* 40:2-17, *as supplemented by chapter* 21 *of Laws of* 1939 (*Pamph. L., p.* 33; *N. J. S. A.* 40:2-17) defines "miscellaneous revenues" as "such amounts as may reasonably be expected to be realized in cash during the budget year from known and regular sources, or from sources reasonably capable of anticipation, and lawfully applicable to the appropriations made in the budget, other than dedicated reve-

nues, revenues from taxes to be levied to support the budget, receipts from delinquent taxes, and surplus revenue." And *section* 40:2-25, *as amended,* provides that, in the budget of a municipality on a "full cash basis" (it seems to be conceded that prosecutor is in this category), there shall be included among the "anticipated revenues, under the caption 'receipts from delinquent taxes,' a proportion of all taxes levied for prior fiscal years, including the lien value of tax titles to real estate standing in the name of the municipality, unpaid and owing to the * * * municipality * * * at the beginning of the budget year, not in excess of the proportion of all such taxes so unpaid and owing at the beginning of the next preceding fiscal year and not subsequently abated, canceled, or remitted, which was collected or realized in cash during such next preceding fiscal year." In statutory intendment, the holder of the "tax title" is the possessor of the tax sale certificate. *R. S.* 1937, 54:5-60, 54:5-61.

Thus it is that "miscellaneous revenues" explicitly comprehend such "amounts" as may "reasonably be expected to be realized in cash" in the course of the budget year both from "known and regular sources" and "sources reasonably capable of anticipation," excepting, *inter alia,* "receipts from delinquent taxes," which by other sections (*R. S.* 40:2-15, 40:2-25, *as amended*) embrace the "lien value of tax titles" and are classified as "anticipated revenue" in proportion to the cash yield from the same source during the preceding fiscal year. Certainly, it was not the legislative design to exclude from this category of reasonably anticipated miscellaneous revenue the moneys which in all likelihood would be realized from sales during the budget year of lands acquired in foreclosure of tax liens. *Section* 40:2-17, *as supplemented,* is all inclusive. That category reaches to all "sources reasonably capable of anticipation." There is no discernible reason of policy for the anticipation of payments of delinquent taxes made by or on behalf of the landowner and the converse as to payments effected through foreclosure of the tax lien and sale of the lands. As in the case of delinquent taxes, the anticipation is founded on the experiences of the prior year. It is limited to the "amount actually realized in cash from the same source

during the next preceding fiscal year," unless the state auditor "shall determine upon application of the governing body that the facts clearly warrant the expectation that" a greater "amount will actually be realized in cash during the budget year."

Chapter 60 of the Laws of 1934 (*Pamph. L., p.* 163; *R. S. App.* A:4-19) and chapter 77 of the Laws of 1935, as amended by chapter 241 of the Laws of 1936 (*Pamph. L.* 1935, *p.* 186; *Pamph. L.* 1936, *p.* 745; *R. S.* 1937, 40:1-1) are of no aid in determining the sense of these provisions, constituting as they do a comprehensive legislative scheme for the economic management of our municipalities.

The Commissioner classifies such revenue as the proceeds of the "sale of a physical asset as distinguished from an item which is annually recurring, such as licenses, fines and penalties, fees and permits, franchise and gross receipts taxes, interest penalties on delinquent taxes and similar items"—in short, as "capital revenue" not classable as "income" for the current year "in any accounting practice, commercial or municipal."

But it is "revenue" nevertheless; and the statute does not make the distinction for which the Commissioner cites "accounting practice." Of course, we are not at liberty to import the principles of accounting into the statute in contravention of its explicit provisions. We are enjoined to interpret and enforce the legislative will as written, and not according to some supposed unexpressed intention. These are not deemed "capital assets" in the usual connotation of the term. Foreclosure is resorted to for the purpose of collecting the tax arrearages; and the lands are not held as a capital asset, but converted into cash as soon as may be. The change of form effected by foreclosure of the delinquent tax lien is without essential significance in the municipal economy. The Commissioner acknowledged that the municipalities "carry" such "properties" in the "current account," and that he does not require that they be included in the "capital account."

The secretary of the defendant board testified that such revenue is not "current income;" that, "as a matter of

accounting practices," it is not classable as "miscellaneous revenue," since it is "not recurring;" and that such classification "could well result in a dislocation of the financial structure of the municipality." In illustration, he referred to a shore municipality which has "in foreclosed property an item which approximates fifty per cent. of the total assessed valuations;" and he deduced that, if this item be considered, the "anticipation would be ridiculous" and "would simply invite disaster." He insisted that a distinction "between property which is acquired for public purposes and property which has been acquired not for public purposes" is inadmissible.

This reasoning overlooks the specific requirement of reasonableness, and likewise the provision of *section* 40:2-53, *as amended,* charging the Commissioner generally with the duty of determining "upon the basis of information and data available" whether "All estimates of revenue are reasonable" in the circumstances.

Since the Commissioner and the defendant Board were not guided by the correct principle in the exercise of their respective statutory functions, the judgment is reversed, without costs; and the cause is remanded for further proceedings in conformity with this opinion.