NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0364-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JORGE L. GOMEZ,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

February 19, 2025

APPELLATE DIVISION

Submitted January 14, 2025 – Decided February 19, 2025

Before Judges Smith, Chase and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 22-12-0753.

John W. Hartmann, attorney for appellant.

Matthew J. Platkin, Attorney General, attorney for respondent (Sarah D. Brigham, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

CHASE, J.A.D.

Following denial of his motion to suppress evidence seized pursuant to a search warrant, defendant Jorge L. Gomez pled guilty to second-degree

possession of a firearm during the commission of a controlled dangerous substance ("CDS") offense, N.J.S.A. 2C:39-4.1(a), and was sentenced to five years in prison with a minimum forty-two months of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).

This appeal raises an issue of first impression. We must decide whether the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA")[1], codified in relevant part at N.J.S.A. 24:6I-31 to -56; and N.J.S.A. 2C:35-5 to -10, requires police to give a written warning for a first offense of marijuana distribution prior to applying for a search warrant. We must also decide whether a probable cause determination requires proof that a person is distributing one ounce or more of marijuana. We conclude the answer to both questions is "no." The Legislature's adoption of CREAMMA did not alter how police conduct investigations of those illegally distributing marijuana or alter the probable cause requirement for obtaining search warrants. Therefore, we affirm defendant's convictions.

---

[1] Despite having the same chemical properties, under New Jersey law there is a difference between regulated legal "cannabis" and unregulated illegal "marijuana." CREAMMA, which became effective February 22, 2021, L. 2021, c. 16, and Article IV, Section 7, Paragraph 13 of the New Jersey Constitution, legalized cannabis by persons twenty-one years of age or older. State v. Gomes, 253 N.J. 6, 23-24 (2023); State v. Cohen, 254 N.J. 308, 328 (2023) (citing N.J.S.A. 24:6I-32(a)).

# I.

The events leading to defendant's indictment were described in detail in New Jersey State Police ("NJSP") Detective Robert Murray's search-warrant application, the search warrant, the NJSP incident report, the NJSP evidence log, and the motion judge's fact-findings. Since there were no issues of material fact in dispute, no testimony was taken by the court. R. 3:5-7(c).

In September 2022, Detective Murray submitted a certified application for a search warrant for defendant's apartment in Trenton. At the time, Detective Murray was assigned to the Intelligence and Criminal Enterprise Section, Violent and Organized Crime Control Central Bureau, Crime Suppression Central Unit of the NJSP ("CSCU"). He certified that he "ha[d] conducted and assisted in numerous criminal investigations that have resulted in arrests and convictions," including weapons and CDS offenses.

In 2022, CSCU received information from a confidential source ("CS") that defendant was distributing marijuana in and around the Trenton area. This CS had provided reliable information in past investigations that helped lead to arrests and convictions. Detective Murray used this information to find a picture of defendant to show the CS, who immediately identified defendant.

The CSCU set up two controlled CDS purchases between the CS and defendant. Each time, the CS called defendant while in the presence of CSCU

members, and defendant instructed the CS to go to the target residence, which he did while under constant surveillance. The CS went inside and exited shortly thereafter. When CSCU members and the CS met at the predetermined debriefing location, the CS turned over marijuana and confirmed that it was provided by defendant in exchange for money.[2]

While surveilling the target residence, Detective Murray and other detectives made two notable observations. First, on September 21, 2022, at about 11:00 p.m., Detective Murray "observed an unknown white sedan pull into [an] [a]lley and park near the [t]arget [r]esidence." He then watched "[a]n unknown individual . . . exit[] the white sedan and enter[] the [t]arget [r]esidence," only to exit and reenter the white sedan "[m]oments later." Based on Detective Murray's "training and experience, and the training and experience of other CSCU members," Detective Murray described this interaction as "consistent with a narcotics sale occurring inside the [t]arget [r]esidence."

Second, detectives "observed [defendant] entering the [t]arget [r]esidence, using keys to do so, at all hours of the day," including "early in the morning and late at night." Given Detective Murray's "training" and

---

[2] Specific quantities were not disclosed because, according to Detective Murray, doing so could have revealed the identity of the CS, compromising the CS's safety.

"experience," Detective Murray believed defendant lived there, alone, as his primary residence.

Following a criminal history check of defendant, Detective Murray learned defendant had indictable convictions for credit card theft in 2004, aggravated assault in 2004, conspiracy to commit murder in 2005, and distribution of synthetic cannabinoid in 2019.[3]

Detective Murray certified he had "probable cause to believe that [defendant] [was] distributing CDS and utiliz[ed] the [t]arget [r]esidence to store, distribute, and/or stockpile CDS, along with evidence of its distribution." He therefore thought he "ha[d] probable cause to believe . . . that the execution of the requested [s]earch [w]arrant for the [t]arget [r]esidence[] . . . w[ould] reveal evidence of the specified crimes." These items included: "CDS, including, but not limited to, marijuana, and items used for the purpose of weighing, processing, diluting, packaging, and administering CDS, specifically scales, baggies, and other related drug paraphernalia"; "records pertaining to the distribution of CDS, . . . whether kept manually or by mechanical or electronic devices"; "proceeds of illegal

_____

[3]  The State does not argue that the conviction counts as a first offense under N.J.S.A. 2C:35-5(b)(12)(b).

drug distribution activity"; and "wireless telephones . . . and other devices for sending and receiving e-mail." The judge authorized the search warrant.

The next day, police executed the search warrant. Defendant was read his Miranda[4] rights and disclosed to the officers "he ha[d] a handgun in the kitchen draw[er] and rifle ammunition on top of the [refrigerator]." The search of the residence yielded the following: one 9mm Sarsilmaz CM9 pistol, with a laser and magazine attached; four 9mm rounds; one green bag containing 5.56mm rounds; one plastic container, five glass jars, and eight plastic bags containing CDS marijuana; eleven boxes of pre-rolled marijuana cigarettes; three plastic bags containing marijuana edibles; one bag containing eleven marijuana electronic cigarettes and four boxes containing an undisclosed number of them; one box containing THC oil; one orange pill bottle containing eighteen Tramadol pills; one black digital scale; one "Latin King Legal Document"; one black iPhone with a black case; one blue iPhone with a blue case; and one kitchen vacuum sealer. In total, five pounds of marijuana worth $6,000 was recovered.

A grand jury returned an indictment charging defendant with fourth-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(3)(b) (count one); third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1) (count two); second-

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

6

degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(10)(b) (count three); second-degree possession of a firearm during the commission of a CDS offense, N.J.S.A. 2C:39-4.1(a) (count four); and second-degree certain persons not to have weapons or ammunition, N.J.S.A. 2C:39-7(b)(1) (count five).

Defendant moved to suppress the evidence seized from the apartment. After argument, the trial court denied defendant's motion to suppress, making findings.

First, the trial court recited the facts of the investigation that supported a finding of probable cause. Next, the court detailed why the CREAMMA amendments that decriminalized the possession of certain quantities of marijuana did not mean police did not have probable cause for the search warrant.

The court reasoned that although probable cause for an arrest and probable cause for a search warrant are the same, each involve a separate and not necessarily identical inquiry. The court found it was unclear whether the search-warrant application, on its own, would have supported probable cause to arrest defendant. However, it determined the application nonetheless supported a finding of probable cause that evidence of distribution and possession with intent to distribute would be found in defendant's home.

A-0364-23

Moreover, the court reasoned although the punishment may be different, the statutes clearly indicate that distribution and possession with the intent to distribute are still offenses. Finally, the court recognized "the statute continues to subject individuals to criminal liability and, thus, investigation into such violations of law . . . continues to be appropriate."

After his suppression motion was denied, defendant pled guilty to second-degree possession of a firearm during the commission of a CDS offense, N.J.S.A. 2C:39-4.1(a) (count four). In exchange for his plea, the State recommended five years of imprisonment subject to the Graves Act. Defendant was sentenced in accordance with the plea agreement. The remaining counts of the indictment were dismissed, and the court imposed the appropriate fines, fees, and penalties.

This appeal follows, with defendant raising the following issues for our consideration:

> POINT I
>
> SINCE DETECTIVE MURRAY DID NOT GIVE [DEFENDANT] THE STATUTORILY REQUIRED WARNING[,] THE CONDUCT NEVER ROSE TO THE CRIMINAL LEVEL OF A SECOND OFFENSE AND A SEARCH WARRANT SHOULD NOT HAVE ISSUED.
>
> POINT II
>
> THE SEARCH WARRANT SHOULD NOT HAVE

ISSUED BECAUSE PROBABLE CAUSE DID NOT EXIST TO BELIEVE [DEFENDANT] WAS DISTRIBUTING OR POSSESSING TO DISTRIBUTE MARIJUANA IN A QUANTITY GREATER THAN ONE OUNCE[.]

II.

A.

Our review of a trial judge's decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). "When reviewing a trial court's decision to grant or deny a suppression motion, appellate courts '[ordinarily] defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'" State v. Smart, 253 N.J. 156, 164 (2023) (alteration in original) (quoting State v. Dunbar, 229 N.J. 521, 538 (2017)). "A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference." State v. Gamble, 218 N.J. 412, 425 (2014). Legal conclusions drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022).

"A search that is executed pursuant to a warrant is 'presumptively valid,' and a defendant challenging the issuance of that warrant has the burden of proof to establish a lack of probable cause 'or that the search was otherwise unreasonable.'" State v. Boone, 232 N.J. 417, 427 (2017) (quoting State v.

<u>Watts</u>, 223 N.J. 503, 513-14 (2015)).  "Accordingly, courts 'accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant.'"  <u>State v. Keyes</u>, 184 N.J. 541, 554 (2005) (alteration in original) (quoting <u>State v. Jones</u>, 179 N.J. 377, 388 (2004)).

B.

The New Jersey Constitution provides "no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized."  <u>N.J. Const.</u> art. I, ¶ 7.  "When a court receives an application from the police for a search warrant, it should not issue that warrant 'unless [it] is satisfied that there is "probable cause to believe that . . . evidence of a crime is at the place sought to be searched."'"  <u>State v. Smith</u>, 212 N.J. 365, 388 (2012) (omission in original) (quoting <u>State v. Marshall</u>, 199 N.J. 602, 610 (2009)); <u>see also</u>, <u>State v. Ross</u>, 256 N.J. 390, 400-01 (2024) (affirming probable cause standard for search warrant to issue for physical evidence in possession of third party).

Probable cause requires "less than legal evidence necessary to convict though more than mere naked suspicion."  <u>Keyes</u>, 184 N.J. at 553 (quoting <u>State v. Sullivan</u>, 169 N.J. 204, 210-11 (2001)).  It exists when a police officer possesses "'a "well[-]grounded" suspicion that a crime has been or is being committed.'"  <u>Sullivan</u>, 169 N.J. at 211 (quoting <u>State v. Waltz</u>, 61 N.J. 83, 87

10

(1972)). "[T]he court must 'make a practical, common[-]sense determination whether, given all of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."'" State v. O'Neal, 190 N.J. 601, 612 (2007) (quoting State v. Moore, 181 N.J. 40, 46 (2004)). Further, probable cause must be determined "based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Marshall, 199 N.J. at 611 (quoting Schneider v. Simonini, 163 N.J. 336, 363 (2000)).

"Information related by informants may constitute a basis for probable cause, provided that a substantial basis for crediting that information is presented." Jones, 179 N.J. at 389. The issuing court must consider the totality of the circumstances in determining whether an informant's tip establishes probable cause, including the informant's "veracity and basis of knowledge." Ibid. (quoting State v. Novembrino, 105 N.J. 95, 123 (1987)). These are the most important factors, and a deficiency in one may be compensated "'by a strong showing as to the other, or by some other indicia of reliability.'" State v. Zutic, 155 N.J. 103, 110-11 (1998) (quoting Illinois v. Gates, 462 U.S. 213, 233 (1983)).

"[R]elevant corroborating facts may include a controlled drug buy

11

performed on the basis of the tip, . . . the suspect's criminal history, and the experience of the officer who submitted the supporting affidavit." Keyes, 184 N.J. at 556. Although a lone fact rarely establishes probable cause, "a successful 'controlled [drug] buy "typically will be persuasive evidence in establishing probable cause."'" Ibid. (quoting Jones, 179 N.J. at 392). When the police have successfully performed a controlled drug buy, "even one additional circumstance might suffice . . . to demonstrate probable cause." Jones, 179 N.J. at 392.

Furthermore, "'a probable cause determination to search a home where the suspect lives may be valid irrespective of whether probable cause to arrest that particular individual has crystallized.'" Boone, 232 N.J. at 428 (quoting State v. Chippero, 201 N.J. 14, 31 (2009)).

## III.

On appeal, defendant argues the court erred in denying his motion to suppress because Detective Murray's certified application did not allege conduct "ris[ing] to the level of criminal conduct," and in the absence of allegations of quantity, the application needed to allege that defendant had been warned for a first offense of distributing marijuana before the warrant could be issued.

Defendant posits that a first offense of N.J.S.A. 2C:35-5(b)(12)(b) with one ounce or less of marijuana does not fit neatly into the categories of "crimes," "disorderly persons offenses," and "petty disorderly persons offenses," as the punishment for that offense is neither incarceration nor a fine, but a written warning. N.J.S.A. 2C:1-4. Since defendant's misconduct is without penal consequences, he contends it is not an offense. Looking to CREAMMA's amendments to N.J.S.A. 2C:35-5(b)(12)(b), defendant asserts that because the warrant application did not specify the marijuana quantities involved in the two controlled buys, and a third suspected CDS transaction, "that all three unwarned alleged marijuana transaction[s] were not penal" and that "probable cause that criminal marijuana distribution was occurring did not exist." We disagree. This is a distinction without a difference that is belied by the statutory language in the CREAMMA amendments.

N.J.S.A. 2C:35-5(a)(1) provides "it shall be unlawful for any person knowingly or purposely . . . [t]o manufacture, distribute or dispense, or to possess or have under [the person's] control with intent to manufacture, distribute or dispense, a [CDS] . . ." ("PWID"). N.J.S.A. 2C:35-5(b)(12)(b) provides that

> [a]ny person who violates [N.J.S.A. 2C:35-5(a)] with respect to:

> . . . marijuana in a quantity of one ounce or less . . . is, for a first offense, subject to a written warning, which also indicates that any subsequent violation is a crime[,] . . . and for a second or subsequent offense, is guilty of a crime of the fourth degree.
>
> [Ibid. (Emphasis added).]

Stated differently, the punishment for PWID or distribution of any quantity of marijuana over one ounce could be imprisonment, and the punishment for PWID or distribution under one ounce or less of marijuana after a warning could also be imprisonment.

Based on the totality of circumstances, Detective Murray's certification more than amply supported probable cause that defendant was unlawfully distributing marijuana and likely would have marijuana intended for distribution in his residence. These circumstances included: (1) the two controlled buys of marijuana from defendant's residential apartment that corroborated the CS's tip; (2) the information provided by the CS, whose reliable information led to multiple arrests and convictions in the past, that defendant was distributing marijuana in the Trenton area; (3) defendant's recent, prior conviction for CDS distribution; (4) Detective Murray's seven years of law enforcement experience, from which he was familiar with the patterns and methods of CDS distribution; (5) Detective Murray's observation

14

of another suspected CDS sale; and (6) Detective Murray's further surveillance confirming the residential apartment was defendant's residence.

In determining what the Legislature envisioned in enacting CREAMMA, we adhere to the cardinal principle that the judicial construction of statutes must always seek as its ultimate goal to carry out the Legislature's apparent intent. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 587 (2021). "The best evidence of that legislative intent is the statutory language," and, accordingly, that is the first place that we look. Ibid. When we look at the plain language of a statute, we are to consider it "'in context with related provisions so as to give sense to the legislation as a whole.'" Williams v. N.J. State Parole Bd., 255 N.J. 36, 46 (2023) (quoting State v. Lopez-Carrera, 245 N.J. 596, 613 (2021)).

Under CREAMMA, the growth, cultivation, processing, manufacturing, preparing, packaging, transferring, and selling of cannabis are all strictly regulated by the Cannabis Regulatory Commission, which requires a license for these activities, sets limits on the number of those licenses it issues, and on the types of licenses one person may concurrently hold, and allows municipalities to set additional restrictions. N.J.S.A. 24:6I-24, -35 to -46; see, e.g., Trenton, N.J., Code § 146-46(A) (setting limitations on where cannabis businesses may be located). The Criminal Code, post-CREAMMA, similarly

15

only allows the licensed distribution of cannabis. <u>See</u> N.J.S.A. 2C:35-5(a). It also limits how much cannabis someone can buy or possess at one time from a licensed retailer, or transfer to another without remuneration, to one ounce, "subject[ing] the person to prosecution" under Chapter 35 of Title 2C for any greater amount.[5] N.J.S.A. 2C:35-10(a).

Additionally, under CREAMMA, the Legislature made the possession of six ounces or less of marijuana "not subject to any punishment, as this possession of [unregulated marijuana] is not a crime, offense, act of delinquency, or civil violation of law." N.J.S.A. 2C:35-10(a)(4)(b). Though CREAMMA downgraded the penal consequences for a first-time commission of PWID or distribution of less than an ounce of marijuana, the Legislature specifically omitted this language from the distribution statute. N.J.S.A. 2C:35-5. The Legislature's purposeful omission shows it intended that PWID or distribution of marijuana remained a crime. <u>Cashin v. Bello</u>, 223 N.J. 328, 340 (2015) (alteration in original) ("[W]here [the Legislature] includes particular language in one section of the statute but omits it in another section of the same [a]ct, it is generally presumed that [the Legislature] acts

---

[5]  N.J.S.A. 2C:35-10(a) to -10(d), together with the amendments to N.J.S.A. 2C:35-5 and 2C:35-10, are the "criminal . . . centerpiece" of CREAMMA. Cannel, <u>New Jersey Criminal Code Annotated</u>, cmt. 1 on N.J.S.A. 2C:35-10(a) to -10(d) (2024).

intentionally and purposely in the disparate inclusion or exclusion." (alterations in original) (quoting N.J. Dep't of Child. & Fams. v. A.L., 213 N.J. 1, 20-21 (2013))). This is supported by the plain language of the Legislature's finding and declarations, which shows that by enacting CREAMMA it intended to "eliminate the problems caused by the unregulated manufacturing, distribution, and use of illegal marijuana within New Jersey." N.J.S.A. 24:6I-32(c).

Our Legislature's clear intent to not alter distribution investigations is further supported by the plain language of N.J.S.A. 2C:35-10. This section specifically imposes limits on criminal investigations, as distinct from prosecution. Ibid. It provides that the odor of marijuana or burnt marijuana does not constitute reasonable suspicion and, by inexorable extrapolation, probable cause. N.J.S.A. 2C:35-10(a)(3)(b)(i). Notably, this statement only applies to simple possession, not illegal distribution or sale. Had the Legislature intended to make sure a first distribution of marijuana is not considered in the probable cause analysis, the plain text of CREAMMA's amendments shows that it knew how to do so, but it did not. That was not an oversight, but a deliberate part of a comprehensive statutory framework in which to investigate and prosecute marijuana dealers who eschew the cannabis licensing system.

17

Defendant's argument, if accepted, would undermine the legal cannabis scheme by creating transactional immunity for multiple violations of the law which CREAMMA did not repeal. We decline to adopt this cramped reading of the statute, which would lead to unintended consequences. Statutes should be interpreted to oblige the "legislative will as written, and not according to some supposed unexpressed intention." See Hoffman v. Hock, 8 N.J. 397, 409 (1952) (quoting City of Camden v. Loc. Gov't Bd., 127 N.J.L. 175, 178 (Sup. Ct. 1941)) (finding no statutory language evidencing an intent to prevent properly licensed distillers from selling liquor directly to retailers). "[A] court should not diversify the plain meaning of statutory language" if there is no bizarre result. State v. Roma, 143 N.J. Super 504, 508 (Law Div. 1976). A plain reading of these statutes reveals that the Legislature still considers distributing any amount of unregulated marijuana a criminal offense, as N.J.S.A. 2C:35-5(a)(1) refers to distribution of any amount of CDS as "unlawful."

Because distribution of any amount of unregulated marijuana is still illegal, the search warrant application did not need to allege defendant sold a specific amount of marijuana before the court approved it. Probable cause for the search warrant was amply supported even though defendant had not been previously issued a warning for distributing one ounce or less of marijuana,

18

and despite the quantities of marijuana sold being omitted from the warrant application. CREAMMA's amendments to the Code of Criminal Justice do not affect the analysis for determining if probable cause exists for issuance of a search warrant. The warning is a condition precedent to prosecution for distribution of less than one ounce of marijuana, not a precondition to apply for or obtain a search warrant. This required warning has no bearing in determining probable cause that a crime occurred or is occurring.

CREAMMA's purpose was to set up a regulated process for the legalized use and purchase of cannabis, not deter or hinder law enforcement's investigation of illegal marijuana distribution. It was not designed to endanger those willing to assist law enforcement, or to jeopardize law enforcement officers acting in an undercover capacity.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION