**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2124-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAMIL WALKER, a/k/a
JAMIL REDDIS,

    Defendant-Appellant.

_____

Argued May 8, 2025 – Decided May 20, 2025

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 23-05-0571 and 23-05-0572.

Nadine Kronis, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Nadine Kronis, of counsel and on the brief).

Anthony J. Robinson, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Anthony J. Robinson, of counsel and on the brief).

PER CURIAM

Defendant Jamil Walker appeals from a February 2, 2023 order denying his motion to suppress evidence seized from his residence and vehicle pursuant to search warrants. He also appeals from the February 9, 2024 judgments of conviction entered after he pleaded guilty to second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b)(1), and third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3). We affirm.

On September 8, 2021, Officer Kevin Sturmfels of the New Brunswick Police Department (NBPD) applied for eight search warrants following an eight-month investigation of the distribution of controlled dangerous substances (CDS) in New Brunswick. The locations to be searched included defendant's residence, 60 Guilden Street, 2nd floor (60 Guilden), and his person. 60 Guilden was described as a three-bedroom apartment with "a concrete driveway to the left of the residence." The search warrants were issued by a Superior Court Judge based on Officer Sturmfels's certification in support of the application.

That certification sets forth the following facts relevant to this appeal. In February 2021, the NBPD street crimes unit received information regarding the distribution and possession of CDS from a past reliable confidential informant (RCI 1). RCI 1 identified an individual known as B-More, subsequently

2

identified as Rashaan Paige, who resided at 231 Joyce Kilmer Avenue (Joyce Kilmer), as the source of CDS for other distributors. RCI 1 was a customer at Joyce Kilmer and reported Paige drove a black BMW 528i to transport CDS.

Reliable confidential informant 2 (RCI 2) provided similar information, identifying Paige as a source of CDS distributed in the New Brunswick area utilizing the same black BMW to transport CDS. RCI 2 also provided information regarding Paige's associate, known as Flatline, who distributed CDS for Paige when he was not available. RCI 2 identified defendant as Flatline.

Officers received additional information from three other confidential informants, all of whom confirmed Paige supplied CDS to others for distribution. Confidential informants 2 (CI 2) and 3 (CI 3) confirmed defendant distributed CDS for Paige when he was unavailable. CI 2 reported defendant usually conducted "his [CDS] transactions on Handy Street between Livingston Avenue and Joyce Kilmer." All the confidential informants reported "[CDS] are sold from multiple individuals that act as a 'network' under" Paige.

Officers corroborated information received from the informants through a series of eight controlled purchases. In July 2021, NBPD conducted a controlled purchase of CDS from defendant. A confidential informant contacted defendant and arranged to purchase CDS at a meet location. Officers established

surveillance of defendant's residence at 60 Guilden. They observed defendant "on the second-floor rear porch of 60 Guilden . . . before traveling to the meet location." After the transaction, "the CI turned over the [CDS] to law enforcement" and reported they "purchased the [CDS] directly from [defendant]."

In August 2021, NBPD conducted a second controlled purchase directly from defendant. On this occasion, defendant traveled to and from the meet location from 258 Handy Street. After the transaction, the CI turned the CDS over to NBPD and reported it was purchased directly from defendant.

Officer Sturmfels also certified:

> During the course of this investigation[,] . . . [NBPD] . . . conducted surveillance in the area of . . . Joyce Kilmer . . . , 2 Wright Place, 62 Reservoir Avenue, 60 Guilden . . . , and 258 Handy Street during various hours. On several occasions, [they] observed [Paige] arriving at all five locations utilizing a black [four]-door BMW (New Jersey temporary registration V[######], changed to and displayed as New Jersey temporary registration W[######]). During [their] surveillance operations, [they] observed that [Paige] would park this vehicle outside of each of the residences, except for 258 Handy Street, and enter through either the front or side doors, where he would stay for a short period of time, and then travel to meet with prospective buyers.

4

Officer Sturmfels concluded Paige's actions were "consistent with quick pick-ups and drop-offs of [CDS] in order to avoid getting caught with a large amount of [CDS]." He also certified "[m]obile surveillance . . . observed [defendant] arriving at 60 Guilden . . . both before and after conducting [CDS] transactions at different meet locations." "Based on the RCIs' information, information from CIs, surveillance observations, controlled purchases[,] and [his] training and experience," he asserted "there is probable cause that the residence[] located at . . . 60 Guilden . . . [was] being utilized to distribute [CDS]," and defendant was "a distributor of [CDS] supplied by [Paige]."

NBPD officers executed the warrants and arrested defendant. The search of 60 Guilden yielded firearm ammunition, including hollow nose bullets, $550 in U.S. currency, and the title to a blue 2009 Pontiac. During execution of the search warrant, a K-9 unit performed a narcotics sniff of the Pontiac, which was parked in the driveway located to the left of 60 Guilden. Officers previously observed defendant operating the vehicle on multiple occasions. The K-9 sniff resulted in a positive indication for narcotics on the driver-side and passenger-side doors, and on the hood of the vehicle. The vehicle was towed to NBPD pending a search warrant application. Officer Sturmfels applied for a warrant

5

to search the vehicle, which was issued the same day. A search of the vehicle yielded firearms and CDS.

Indictment No. 23-05-0571 charged defendant with: (1) third-degree conspiracy to possess CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3), and N.J.S.A. 2C:5-2; (2) second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); (3) third-degree receiving stolen property, N.J.S.A. 2C:20-7(a); (4) second-degree unlawful possession of a machine gun, N.J.S.A. 2C:39-5(a); (5) two counts of third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3); (6) two counts of second-degree possession of CDS with intent to distribute within 500 feet of public property, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-7.1; (7) two counts of third-degree possession of CDS with intent to distribute within 1000 feet of a school zone, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-7(a); (8) two counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1); (9) two counts of second-degree possession of a firearm during a CDS offense, N.J.S.A. 2C:39-4.1(a); (10) two counts of fourth-degree unlawful receipt of a large capacity magazine, N.J.S.A. 2C:39-3(j); (11) fourth-degree unlawful receipt of ammunition, N.J.S.A. 2C:58-3.3(b); and (12) fourth-degree possession of drug paraphernalia with intent to distribute, N.J.S.A. 2C:36-3.

6

Separately, Indictment No. 23-05-0572 charged defendant with: (1) two counts of second-degree certain persons not to possess firearms, N.J.S.A. 2C:39-7(b)(1); and (2) two counts of first-degree possession of a firearm by a person with a certain prior conviction, N.J.S.A. 2C:39-5(j).

Defendant moved to suppress arguing the search warrant for 60 Guilden was unsupported by probable cause because Officer Sturmfels's certification failed to establish a nexus between 60 Guilden and the distribution of CDS. The motion judge granted defendant's motion to suppress. He declined to consider Officer Sturmfels's certification because a different judge in an unrelated case found him not credible. Without the certification, the motion judge found the warrant application did not set forth an adequate basis to find probable cause to search 60 Guilden or defendant's vehicle.

On leave granted, we summarily reversed. We "disagree[d] with the motion judge that Officer Sturmfels'[s certification] was insufficient on its face to support a finding of probable cause." Indeed, "[c]ontrary to the motion judge's conclusion, the [certification] supporting the warrants contained sufficient evidence from which the [issuing] judge could have concluded . . . probable cause existed."

A-2124-23

We concluded "it was erroneous for the judge to accept another judge's factual findings from a prior matter in lieu of holding an evidentiary hearing on the issue of Officer Sturmfels'[s] credibility." "To the extent the motion judge believed that Officer Sturmfels'[s certification] was not sufficiently reliable to support a finding of probable cause, the appropriate course would have been to engage in an evidentiary hearing and make findings of fact regarding [his] credibility in this case."

We noted "[n]othing in this order should be interpreted as precluding defendant[] from challenging the search warrants on remand or from renewing [his] request for a Franks[1] hearing. Any such challenge . . . should be resolved only after an evidentiary hearing and appropriate fact finding."

Following remand, defendant argued "there was insufficient probable cause to support the issuance of the search warrant for . . . 60 Guilden," and the K-9 sniff of defendant's vehicle constituted an unlawful search. Defendant also requested a Franks hearing "to examine [Officer] Sturmfels's bias and credibility."

On February 2, 2023, after hearing oral argument, the court entered an order denying defendant's motion to suppress supported by a written opinion.

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

The court determined "defendant has shown no viable basis for a <u>Franks</u> hearing." It found "the only information [it had] been given to question the search warrant's credibility [was] another judge's credibility finding in an unrelated case," and defendant failed to "present[] any evidence of misstatements of fact, much less material misstatements" in this case. The court concluded a <u>Franks</u> hearing was not required by our prior order because its "decision [was] not based to any extent on a finding of the credibility of Officer Sturmfels derived from another matter."

The court also found defendant did not "present[] a valid basis to suppress evidence found at 60 Guilden . . . or within the 2009 Pontiac in the driveway of 60 Guilden." It rejected defendant's claim Officer Sturmfels's certification did not "provide[] a[] '[]sufficient nexus' between . . . 60 Guilden . . . and any alleged criminal activity." The certification "mentions 60 Guilden . . . eighteen separate times in connection with defendant[], including in relation to controlled buys of CDS." The court found, "[u]nder the totality of the circumstances described in the certification, a judge could reasonably have a 'well-grounded suspicion that a crime has been or is being committed,' in other words[,] probable cause."

9

The court concluded the K-9 sniff of defendant's vehicle was permissible because the officers had a warrant to search 60 Guilden and were lawfully on the premises conducting the search pursuant to the warrant when the K-9 sniff occurred. "Only after the search of the premises produced [indicia of criminal behavior] was the K-9 exposed to the vehicle. Once the [K-9] indicated the presence of drugs or weapons inside the car, the police removed the [vehicle] to headquarters and obtained a search warrant . . . before searching the car."

On appeal, defendant raises the following points for our consideration.

POINT I

THE EVIDENCE RECOVERED FROM THE SEARCH OF [DEFENDANT'S] HOME AND DRIVEWAY MUST BE SUPPRESSED BECAUSE THE SEARCH WARRANT [CERTIFICATION] FOR 60 GUILDEN . . . DID NOT ESTABLISH AN ADEQUATE NEXUS BETWEEN [DEFENDANT'S] HOME OR DRIVEWAY AND THE ALLEGED CRIMINAL ACTIVITY, AND THE SUBSEQUENT [K-9] SNIFF OF THE CAR PARKED IN [DEFENDANT'S] DRIVEWAY WAS UNCONSTITUTIONAL.

A. The [certification] failed to establish a fact-based nexus linking [defendant's] home to the alleged criminal activity. Therefore, all evidence obtained from the search of 60 Guilden . . . must be suppressed.

B. The [K-9] sniff of the car parked in the driveway of [defendant's] home violated the Fourth Amendment.

10
A-2124-23

POINT II

ALTERNATIVELY, THE COURT'S FAILURE TO HOLD AN EVIDENTIARY HEARING – AS ORDERED BY THE APPELLATE DIVISION – REQUIRES ANOTHER REMAND.

Having considered these arguments in light of the record, we affirm substantially for the reasons set forth in the court's thorough and well-reasoned opinion. We add the following comments.

Our scope of review of a decision on a motion to suppress is limited. State v. Erazo, 254 N.J. 277, 297 (2023). We will "uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Cohen, 254 N.J. 308, 318 (2023) (quoting State v. Ahmad, 246 N.J. 592, 609 (2021)). Accordingly, we "reverse only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)) (internal quotation marks omitted). In contrast, a trial court's legal conclusions and "the consequences that flow from established facts" are reviewed de novo. State v. Hubbard, 222 N.J. 249, 263 (2015).

"Our constitutional jurisprudence expresses a decided preference that government officials first secure a warrant before conducting a search of a home

or a person." State v. Watts, 223 N.J. 503, 513 (2015) (citing State v. Edmonds, 211 N.J. 117, 129 (2012)). An application for a search warrant "must satisfy the issuing authority 'that there is probable cause to believe that . . . evidence of a crime is at the place sought to be searched.'" State v. Boone, 232 N.J. 417, 426 (2017) (emphasis omitted) (quoting State v. Jones, 179 N.J. 377, 388 (2004)). "Probable cause for the issuance of a search warrant requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. Chippero, 201 N.J. 14, 28 (2009) (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)). "[T]he probable cause determination must be . . . based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Boone, 232 N.J. at 427 (alteration in original) (quoting State v. Marshall, 199 N.J. 602, 611 (2009)).

A search warrant is presumed valid, and a defendant bears the burden to show that it was issued without probable cause or that the search was "otherwise unreasonable." Chippero, 201 N.J. at 26 (quoting State v. Evers, 175 N.J. 355, 281 (2003)). "Reviewing courts 'accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant.'" Boone, 232 N.J. at 427 (alteration in original) (quoting Jones, 179 N.J. at 388).

"[W]hen the adequacy of the facts offered to show probable cause is challenged after a search made pursuant to a warrant, and their adequacy appears to be marginal, the doubt should ordinarily be resolved by sustaining the search." Jones, 179 N.J. at 388-89 (quoting State v. Kasabucki, 52 N.J. 110, 116 (1968)). A reviewing court should consider the "totality of the circumstances," and uphold the validity of a search warrant if "the finding of probable cause relies on adequate facts." Boone, 232 N.J. at 427 (citing Jones, 179 N.J. at 388-89).

"Information related by informants may constitute a basis for probable cause, provided that a substantial basis for crediting that information is presented." Jones, 179 N.J. at 389 (citing State v. Sullivan, 169 N.J. 204, 212 (2001)). "[A] court must consider the veracity and basis of knowledge of [an] informant as part of its totality [of the circumstances] analysis." State v. Keyes, 184 N.J. 541, 555 (2005) (citation and internal quotation marks omitted).

The veracity factor may be shown "by demonstrating that the informant has proven reliable" in "providing [other] dependable information in previous police investigations." Ibid. The basis-of-knowledge factor considers whether the informant obtained his information in a reliable manner. Ibid. An informant's basis of knowledge will be deemed sufficient if "the tip reveals 'expressly or clearly' how the informant became aware of the alleged criminal

activity." Id. at 555-56 (quoting State v. Smith, 155 N.J. 83, 94 (1998)). A controlled buy of CDS based upon an informant's tip "typically will be persuasive evidence in establishing probable cause." Sullivan, 169 N.J. at 217.

We are satisfied the court correctly determined Officer Sturmfels's certification contained sufficient evidence to support a finding of probable cause. Multiple confidential informants, including two who previously provided reliable information, identified defendant as a person who was distributing CDS in New Brunswick. The NBPD's eight-month investigation involved multiple controlled purchases of CDS that corroborated the information obtained from the confidential informants, including two controlled purchases directly from defendant.

We are unpersuaded by defendant's claim the certification did not set forth a basis to find probable cause to search 60 Guilden. The certification plainly established a sufficient nexus between 60 Guilden and the distribution of CDS. In July 2021, officers observed defendant depart from 60 Guilden to the meet location for a controlled purchase. On several occasions during the investigation, Paige arrived at 60 Guilden in his black BMW, parked outside, and entered "for a short period of time" before traveling "to meet with prospective buyers." Officers also "observed [defendant] arriving at 60

14

Guilden . . . both before and after conducting [CDS] transactions at different meet locations." The certification established "a fair probability that contraband or evidence of a crime" would be found at 60 Guilden. See Chippero, 201 N.J. at 28.

Defendant's reliance on Boone is not convincing. In that case, police surveilled the defendant for two months and observed him engage in drug-related activities, including hand-to-hand sales of suspected CDS. 232 N.J. at 422. A search warrant for the defendant's apartment was issued based on a "warrant application that included information about [the defendant's] alleged drug-dealing in the general area." Id. at 421.

"[T]here was nothing in the affidavit to indicate where [the defendant] lived, how police knew which apartment was his, or how the apartment was connected to his drug dealing." Id. at 430. The Court held the warrant application may have been sufficient to establish probable cause to arrest the defendant, but "nothing on the face of the warrant application gave rise to probable cause to believe that evidence" of criminal activity would be found in his apartment. Id. at 430.

In this case, unlike in Boone, the warrant application set forth facts established during NBPD's extensive investigation sufficient to link 60 Guilden

15

to the distribution of CDS by defendant and Paige. Defendant was observed traveling to and from 60 Guilden in connection with CDS transactions, including the controlled purchase in July 2021, and Paige was observed entering 60 Guilden for short periods of time before conducting CDS transactions.

Defendant's claim the K-9 sniff of his vehicle was unlawful is premised on a contention the warrant for 60 Guilden was invalid and is therefore without merit. His reliance on Florida v. Jardines, 569 U.S. 1 (2013), is misplaced because the officers were lawfully in the driveway of 60 Guilden pursuant to the search warrant and did not exceed "the scope of their license when they went [onto the driveway] with a trained [K-9] to conduct a search." See State v. Ingram, 474 N.J. Super. 522, 537 (App. Div. 2023) (citing Jardines, 569 U.S. at 9). His claim the K-9 sniff of the vehicle was an unauthorized search is incorrect. K-9 sniffs are not searches. State v. Dunbar, 229 N.J. 521, 538-39 (2017). The officers did not search the vehicle until after they obtained a search warrant.

Defendant's contention the court was obligated to conduct an evidentiary hearing on remand is mistaken. In our prior order, we determined it was improper for the motion judge to disregard Officer Sturmfels's certification based on a credibility finding by a different judge in an unrelated case without

16

conducting an evidentiary hearing. Because the court did not take that finding into consideration when deciding the motion on remand, an evidentiary hearing was not required by our prior order.

We are also satisfied the court properly denied defendant's request for a Franks hearing on the merits. Our review of a trial judge's decision whether to grant a Franks hearing is for an abuse of discretion. State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009), aff'd, 201 N.J. 229 (2010).

In Franks, the United States Supreme Court imposed limitations on when a defendant may "challenge the truthfulness of factual statements made in an affidavit supporting [a search] warrant." 438 U.S. at 155. In State v. Howery, the New Jersey Supreme Court adopted the analytical framework set forth in Franks. 80 N.J. 563, 568 (1979).

Under that standard, a "presumption of validity with respect to the affidavit supporting the search warrant" must be overcome before a defendant is entitled to an evidentiary hearing. Franks, 438 U.S. at 171; accord Howery, 80 N.J. at 566. "First, the defendant must make a 'substantial preliminary showing' of falsity in the warrant." Howery, 80 N.J. at 567 (quoting Franks, 438 U.S. at 170). Second, they must allege "'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant

that are claimed to be untrue." Ibid. (quoting Franks, 438 U.S. at 171). "Finally, the misstatements claimed to be false must be material to the extent that when they are excised from the affidavit, that document no longer contains facts sufficient to establish probable cause." Id. at 568 (citing Franks, 438 U.S. at 171-72).

In Broom-Smith, we emphasized that a Franks/Howery hearing "is aimed at warrants obtained through intentional wrongdoing by law enforcement agents and requires a substantial preliminary showing." 406 N.J. Super. at 240. As our Supreme Court recently reaffirmed, a "defendant's burden under Franks and Howery is high." State v. Desir, 245 N.J. 179, 198 (2021).

The court determined defendant failed to "present[] any evidence of misstatements of fact, much less material misstatements" in this case, and denied his request for a Franks hearing. On appeal, defendant likewise does not set forth any basis to find "a 'substantial preliminary showing' of falsity in the warrant." Howery, 80 N.J. at 567 (quoting Franks, 438 U.S. at 170). Rather, his claim is premised on the mistaken contention an evidentiary hearing was required by our prior order. We discern no basis to disturb the court's decision to deny defendant's request for a Franks hearing.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division